THE STATE OF OHIO *v.* ROSE.

(Nos. MCR-74-14905, 14096, 15121—Decided April 21, 1975.)

Toledo Municipal Court.

*Mr. Charles Abood,* city prosecutor, for plaintiff.
*Mr. Gerald B. Lackey,* for defendant.

GABRIEL, J. This case is before the court upon a motion to dismiss, the stipulated facts, the brief of defendant in support thereof and the answer brief of the prosecution in opposition thereto.

The defendant is charged with disorderly conduct under R. C. 2917.11 (A)(2), by an affidavit or complaint which states, in part, that "on or about the 9th day of November 1974 * * * one Richard C. Rose * * * did recklessly cause inconvenience and annoyance to persons in the Franklin Park Mall in front of the Albert's store by boycotting the said store and asking persons not to buy at their said store * * *."

This section of the Revised Code reads, in part, as follows:

"(A) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:
"* * *

"(2) Making unreasonable noise or offensively coarse utterance, gesture, display, or communicating grossly abusive language to any person;"

It is patently obvious that the complaint in question does not state the essential facts constituting an offense as required by Crim. R. 3. By no stretch of the imagination can the facts alleged fall within the purview of R. C. 2917.11 (A) (2) as the activity proscribed therein. In so ruling it is not necessary to inquire into the question of whether or not this section is *per se* too vague to be constitutional. Whatever is meant thereby certainly does not encompass the activity actually described in the complaint.

Moreover, it is clear that, as worded, the complaint is too vague to meet the constitutional standards of due process under the Sixth and Fourteenth Amendments to the U. S. Constitution and Section 10, Article I of the Ohio Constitution. In the charging document, the defendant should be apprised of an offense clearly definable by the facts alleged and, if proven, which would warrant his conviction. See *Lerch* v. *Sandusky* (1926), 23 Ohio App. 109, 155 N. E. 393.

The motion to dismiss as to the charge of disorderly conduct is therefore found well taken and granted. It is not necessary to pass upon the additional contention of defendant that, as applied, this charge would deny him of his right to free speech protected by the First and Fourteenth Amendments to the U. S. Constitution.

Defendant, however, raises this latter argument in respect to two charges of criminal trespass brought against him under R. C. 2911.21 (A) (4), which reads, in part, as follows:

"(A) No person, without privilege to do so, shall do any of the following:

"* * *

"(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either."

These charges, according to the stipulated facts, grew out of incidents occurring at the Franklin Park Mall located at Monroe Street and Talmadge Road in the city of Toledo, Ohio. This shopping center is a privately owned large complex housing approximately 100 stores under a huge, enclosed mall area. Access to the enclosed mall is gained by roads leading off the aforementioned two major thoroughfares (Monroe and Talmadge) over some 500 feet of parking area to the mall itself.

On each of the two occasions, resulting in these two charges of criminal trespass, Richard C. Rose, the defendant, was peacefully distributing handbills or leaflets to passers-by in the enclosed area of the mall directly in front of the entrance to Albert's Ladies Wear and not blocking ingress or egress thereto. The sole subject matter of these handbills was directed to a labor dispute which existed between Albert's and Amalgamated Clothing Workers of America, AFL-CIO, and the distribution was to publicize this fact and to exhort the recipients to not support law breakers by shopping at Albert's. Also enumerated were the eight unfair labor practices of which Albert's had been found guilty by an Administrative Law Judge of the National Labor Relations Board. On November 8, 1974, and

again on November 15, 1974, while engaged in this activity, Rose was ordered to cease by an off-duty deputy sheriff acting as an agent for the mall. When Rose refused to leave or cease distributing these handbills he was placed under arrest on each occasion for criminal trespass.

The court finds on authority of *Marsh* v. *Alabama* (1946), 326 U. S. 501, *Amalgamated Food Employees Union Local 500* v. *Logan Valley Plaza* (1968), 391 U. S. 308, *Lloyd Corp.* v. *Tanner* (1972), 407 U. S. 551, and *Central Hardware Co.* v. *NLRB* (1972), 407 U. S. 539, that defendant's motion to dismiss is well taken and granted. A review of the impact of these decisions and the standards evolved therefrom clearly makes the prosecution of the defendant for criminal trespass a violation of his right to free speech as protected by the First and Fourteenth Amendments to the U. S. Constitution.

Also directly in point and providing an excellent analysis of the foregoing U. S. Supreme Court decisions is the case of *Handen* v. *Colorado Springs,* No. C 459, October 7, 1974, 88 LRRM 2203, decided by the Colorado Supreme Court.

The U. S. Supreme Court early established that this type of activity and peaceful picketing, as well, could not be abridged on the ground that title to the property was owned by the municipality. *Lowell* v. *Griffin* (1938), 303 U. S. 444; *Hague* v. *C. I. O.* (1939), 307 U. S. 496; *Schneider* v. *State* (1939), 308 U. S. 147; *Jamison* v. *Texas* (1943), 318 U. S. 413.

However, it was in *Marsh* v. *Alabama, supra,* that the U. S. Supreme Court first enunciated that private property may, for First Amendment purposes, be treated as public property.

*Logan Valley Plaza, supra,* extended the doctrine in *Marsh, supra,* to a shopping center holding that, under the circumstances, a shopping center was clearly the functional equivalent of the community business block involved therein, and was therefore imbued with public attributes for First Amendment purposes.

*Lloyd Corp., supra,* further refined this doctrine to in-

clude two additional criteria: (1) The message sought to be conveyed must be directly related to the purpose to which the property is put; and (2) there must be no other reasonable opportunities available upon public property for conveying the message to the intended audience. This resulted from the activity involved which was anti-war protests at a shopping center. The U. S. Supreme Court held this was not activity consonant with the use of a shopping center and permitted use of the state trespass law to enjoin such activity.

However, in the instant case it is abundantly clear that all three criteria established by the U. S. Supreme Court have been met for the purpose of insulating the activity herein involved from prosecution under the state criminal trespass laws.

Without a prolonged discussion, the first criterion, namely, the shopping center must be the functional equivalent of the community block, is met in full measure.

At page 319 in *Logan Valley, supra,* where the shopping center property on which peaceful picketing occurred was privately owned, the U. S. Supreme Court viewed the shopping center as a "community business block" and held that under such circumstances " * * * the state may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put."

The Logan Valley Plaza was described by the U. S. Supreme Court, at pages 317 and 318, as follows:

"* * * Inside the mall were situated, at the time of trial, *two substantial commercial enterprises* with numerous *others* soon to follow. Immediately adjacent to the mall are two roads, one of which is a heavily traveled state highway and from both of which lead entrances directly into the mall. Adjoining the buildings in the middle of the mall are sidewalks for the use of pedestrians going to and from their cars and from building to building. In the parking areas, roadways for the use of vehicular traffic entering and

leaving the mall are clearly marked out. The general public has unrestricted access to mall property.'' (Emphasis added.)

The Franklin Park Mall with over 100 stores, a large parking area, and access by two main thoroughfares is clearly the equivalent of a community business district. Seeking to reconcile the shopping center phenomenon with First Amendment demands, the U. S. Supreme Court cogently stated in *Logan Valley*, at pages 324 and 325:

''The economic development of the United States in the last 20 years reinforces our opinion of the correctness of the approach taken in *Marsh*. The large-scale movement of this country's population from the cities to the suburbs has been accompanied by the advent of the suburban shopping center, typically a cluster of individual retail units on a single large privately owned tract. It has been estimated that by the end of 1966 there were between 10,-000 and 11,000 shopping centers in the United States and Canada, accounting for approximately 37% of the total retail sales in those two countries.

''These figures illustrate the substantial consequences for workers seeking to challenge substandard working conditions, consumers protesting shoddy or overpriced merchandise, and minority groups seeking nondiscriminatory hiring policies that a contrary decision here would have. Business enterprises located in downtown areas would be subject to on-the-spot public criticism of their practices, but businesses situated in the suburbs could largely immunize themselves from similar criticism by creating a *cordon sanitaire* of parking lots around stores. Neither precedent nor policy compels a result so at variance with the goal of free expression and communication that is the heart of the First Amendment.''

Turning now to the first of the two additional criteria established by *Lloyd Corp.* v. *Tanner, supra,* was the message sought to be conveyed directly related to the purpose to which the property was put?

In *Lloyd,* the U. S. Supreme Court, in dealing with the distribution of anti-war leaflets in the Lloyd Center which

had virtually no connection with the function of the shopping center, observed that this was not a particularly appropriate forum for handbill distribution and stated, at page 564:

"* * * The message sought to be conveyed by respondents *was directed to all members of the public, not solely to patrons* of Lloyd Center or any of its operations. Respondents could have distributed these handbills on any public street, on any public sidewalk, in any public park, or in any public building in the city of Portland." (Emphasis added.)

Here, we have a different case. Here, it was specifically the prospective patrons of Albert's Ladies Wear to whom the protest was directed, and the protest was lodged against unfair labor practices of which Albert's had been found guilty by an Administrative Judge of the N. L. R. B. Clearly this message was directly related to the purpose to which Albert's property was put.

Secondly, *Lloyd, supra,* imposed the requirement: Were there other reasonable opportunities for conveying the message to the intended audience upon public property?

Under the physical surroundings prevalent at Franklin Park Mall and the nature of the activity involved here—handbill distribution—it is not reasonable to believe that such activity could have been effectively conducted at any other place to reach the intended audience. This is particularly true since the entrances to Franklin Park are used commonly by all automobiles entering the shopping center and there is no way of knowing which ones are destined for Albert's.

Moreover, as pointed out in *Logan Valley, supra,* at page 322:

" * * * [T]he task of distributing handbills to persons in moving automobiles is vastly greater (and more hazardous) than it would be were petitioner permitted to pass them out within the mall to pedestrians."

The prosecution attempts to distinguish *Handen, supra,* from the instant case because both picketing and handbilling were involved therein; whereas only handbil-

ling is involved here. He asserts that the difference lies in that where only handbilling occurs, there is a right of the shopping center to protect itself from "the littering problem that would certainly result from continued and excessive handbilling." Nowhere in the stipulated facts is there any reference to excessive handbilling.

The court cannot presume such, and assuming that some littering would occur this would be the subject of a prosecution under the proper littering law against the offender, be it the distributor or distributee. Certainly it has no relevance to the present case based upon criminal trespass.

Moreover, there is no need, here, to consider whether the criminal trespass law under which defendant is charged might be properly involved under different circumstances. Defendant was engaged in peaceful conduct not obstructing ingress or egress to Albert's. Defendant's conduct was within the ambit of protection provided by the First and Fourteenth Amendments to the U. S. Constitution and therefore the motion to dismiss is found well taken and granted.

*Cases dismissed and defendant discharged.*