The State of Ohio, Appellee, *v.* Burgun, Appellant.

(No 34968—Decided August 12, 1976.)

Ms. *Almeta A. Johnson*, prosecuting attorney, for appellee.

Messrs. *Berkman, Gordon & Kancelbaum* and Mr. *Charles M. Delaum*, for appellant.

CORRIGAN, J. The appellant, Dalene Burgun, was convicted in Cleveland Municipal Court of pandering obscenity in violation of R. C. 2907.32(A)(4). She is now appealing her conviction and has assigned seven errors as a basis for her appeal.

On January 21, 1975, Detectives Bernard Jones and James Kennelly of the Cleveland Police Department went to The Gift and Book Shop at 693 East 185th Street in Cleveland. Upon entering the shop, the officers found that it was divided into two sections. The front portion of the store was devoted to the display for sale of mass circulation magazines, such as Better Homes and Gardens, Boating, Flying, etc., and miscellaneous gift items. They testified in the rear were displayed magazines of the "male variety," paperback books, a nude rubber female doll, and various "sexual aids." The magazines were encased in translucent plastic through which one could view the covers of the magazines. The magazine covers were "given up mostly to bosomy females." The covers of the paperback books contained pictures of "females with the breast being the prominent focal point and the female pubic area being the prominent focal point." The rear portion of the store also contained several coin-operated booths into which an individual could enter and view various movies. The movies operated automatically without a projectionist. The operation of the movies was described by Detective Jones on direct examintion:

"You put a quarter in a slot and this little coin container. One is marked "A" and one marked "B". And, depending on which machine you put it in determines which one of these two projectors is going to play. And, it plays for twenty-five cents for about a minute and a half. And, then it shuts off. You put another quarter in and after enough quarters you have seen the entire movie."

About midway into the store and about twenty feet from the rear portion of the store was a counter with a cash register. A person standing at the cash register could see the adult magazines in the rear of the store. On January 21, when the detectives entered the store, the appellant was working in the store behind the counter. She was the only person working in the store at that time.

While Detectives Jones and Kennelly were in the store, Detective Jones entered one of the booths in the rear of the store and viewed the entire movie contained therein. Detective Jones described the movie as follows:

"* * * It's in color. It has no sound. A male is shown sitting in a room on a couch and reading a magazine or looking at one. A female enters and very quickly she begins to perform fellatio on the male. They then disrobe and are shown engaged in sexual intercourse with the female being on her knees and hands and he being behind her. Sexual intercourse is shown in detail with a full view of the private area of both the male and female. And, ultimately the male has ejaculation."

After Detective Jones had seen the entire movie, he and Detective Kennelly went to Cleveland Municipal Court to obtain a search warrant. Based on Detective Jones' affidavit a warrant was issued authorizing the seizure of the film which Detective Jones had viewed and also the projector which was used to show the film.

On January 22 Detectives Jones and Kennelly returned to The Gift and Book Shop to serve the warrant. The appellant was the only person in the store when the detectives arrived. Detective Jones ascertained that the movie he had seen the day before was still being shown and then the appellant was placed under arrest. The appellant gave the officers a key to the booth so they could seize the film and projector. After the detectives had obtained the film and projector, the appellant checked to see if anyone was in the rear portion of the store, locked the front door to the store, and left with the officers.

Based on the investigation of Detectives Jones and Kennelly, the appellant was charged in Cleveland Munici-

pal Court with the crime of pandering obscenity. She demanded and received a jury trial. The jury found her guilty of the crime charged.

In appellant's first assignment of error she alleges that the trial court erred in failing to grant her pre-trial motion for dismissal. Prior to trial, the appellant moved for a dismissal on the grounds that the complaint under which she was charged failed to allege an essential element of the crime with which she was charged. The trial court denied the motion.

The appellant was charged with pandering obscenity, a violation of R. C. 2907.32(A)(4). Pandering obscenity is a misdemeanor of the first degree for a first offense. R. C. 2907.32(C). The appellant was prosecuted in the Cleveland Municipal Court by complaint. Criminal Rule 3 defines a complaint as follows:

"The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths."

The complaint under which the appellant was charged reads, in part, as follows:

"Dalene Burgun did present or participate in presenting a certain obscene performance, to wit: 8mm movie, no title, admission price 25c per one minute of viewing time, knowing the performance was to be presented publicly while cashier at 693 E. 185th St. in violation of R. C. 2907.-32(A)-4."

R. C. 2907.32(A)(4) reads:

"(A) No person, with knowledge of the character of the material or performance involved shall do any of the following: * * *

(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged * * *."

The statute clearly makes knowledge of the character of the material an essential element of the crime of pan-

dering obscenity. Nowhere in the complaint, however, is the appellant charged with having knowledge of the character of the movie. The appellant contends that because this element of the crime was omitted from the complaint, the complaint is fatally defective. The state, however, contends that the complaint states the essential facts and gives the numerical designation of the applicable statute as required by Criminal Rule 3. The issue in this assignment of error then is whether or not when Criminal Rule 3 requires the complaint to state the "essential facts" it means that at a minimum the complaint must state the "essential elements" of the crime charged.

The Ohio Constitution guarantees to every defendant the right to know the "nature and cause of the accusation against him." Section 10, Article I, Constitution. The primary purpose of a charging instrument in a criminal prosecution is to inform the defendant of the nature of the offense with which he is charged. *State* v. *Lindway* (1936), 131 Ohio St. 166, *cert. den.* 299 U. S. 506; *Holt* v. *State* (1923), 107 Ohio St. 307; *State* v. *Villagomez* (1974), 44 Ohio App. 2d 209; *City of Toledo* v. *Kohlhofer* (1954), 96 Ohio App. 355. In light of this purpose the law of Ohio has consistently held that an indictment or affidavit must set forth all the essential elements of the crime charged or it is invalid. The courts of Ohio have consistently adhered to this principle of law.

In *State* v. *Oliver* (1972), 32 Ohio St. 2d 109, the Supreme Court held:

"An indictment need not be in the exact language of the statute defining the offense, so long as all the essential elements of the crime are contained in language equivalent to that used in the statute * * *."

And in *State* v. *Cimpritz* (1953), 158 Ohio St. 490, the court held:

"If any material element or ingredient of an offense, as defined by statute, is omitted from an indictment, such omission is fatal to the validity of the indictment."

Although *State* v. *Oliver, supra,* and *State* v. *Cimpritz, supra,* dealt only with a defect in an indictment, the same

rule applies to a complaint charging commission of a misdemeanor which fails to state all the essential elements of the crime charged.

In *State* v. *Goodman* (1966), 8 Ohio App. 2d 166, prior to the adoption of Crim. R. 3, the court held:

"If a material element is omitted from an affidavit such omission is fatal to the validity of such affidavit."

Since the adoption of the Ohio Rules of Criminal Procedure the complaint replaces the affidavit as the charging instrument in misdemeanor cases. *State* v. *Villagomez, supra* at 211; *State, ex rel. Wilson*, v. *Nash* (1974), 41 Ohio App. 2d 201, 206; Schroeder-Katz, *Ohio Criminal Law* Vol. 2, "Crim. R. 3—Author's Text" p. 126. Since under the Rules of Criminal Procedure the complaint serves the same function as the affidavit did in pre-rule days, the same standard for judging the sufficiency of a complaint as was used to judge the sufficiency of an affidavit must be applied unless some provision of the Rules of Criminal Procedure expressly modifies that standard. Nothing in Criminal Rule 3 or any of the other rules of criminal procedure changes the rule that the complaint must state all the material elements of the crime charged.

The state places great emphasis on the fact that Criminal Rule 3 states that the complaint should contain the "essential facts constituting the offense charged" and does not mention the term "elements of the crime." The state sees this as meaning that the complaint need not state all the elements of the crime charged. We cannot agree.

In the context of criminal procedure the term "essential facts constituting the offense" can only mean those facts proof of which is required to obtain a conviction. The facts which the state must prove to obtain a conviction are those facts which constitute the elements of the crime charged. Viewed in this light, Crim. R. 3 means at a minimum that the list of essential facts contained in the complaint must state the essential elements of the crime charged.

This conclusion is consistent with prior cases that equate the term "material facts of the crime" with the

term "essential elements of the crime." See *Harris* v. *State* (1932), 125 Ohio St. 257; *Ellars* v. *State* (1874), 25 Ohio St. 385; *Lerch* v. *City of Sandusky* (1926), 23 Ohio App. 109; *State* v. *Rose* (1975), 44 Ohio Misc. 17.

The statute under which the appellant was charged clearly makes knowledge of the character of the movie an essential element of the crime. Nowhere in the complaint, however, is the appellant charged with having knowledge of the character of the movie. In *Lerch* v. *City of Sandusky, supra,* the court of appeals held that the test for determining the sufficiency of a charge is whether the defendant could be found guilty of everything in the charge and still not have violated the law. Since the complaint which charged the appellant with pandering obscenity failed to charge an essential element of the crime, the appellant could have done everything stated in the complaint and still not have violated the law. The complaint, as written, charges no crime and is insufficient as a matter of law.

In a criminal action, the accused has a constitutional right to be informed of the nature and cause of the accusation against him. The formal charge whether by indictment, information, or complaint under Crim. R. 3, must contain the constitutent elements of a criminal offense. While all the specific facts relied upon to sustain the charge need not be recited, the elements of the crime must be stated.

The state contends that the failure to charge an element of the crime is cured by the fact that the complaint designates the statute under which the appellant was charged and that a reading of the statute will inform the appellant of all the elements of the crime with which she is charged. A complaint which is invalid because it fails to allege a material element of the crime charged cannot be cured by the use of conclusive terms. In *Fouts* v. *State* (1857), 8 Ohio St. 98, the Ohio Supreme Court held that an indictment charging the defendant with murder in the first degree was invalid because it failed to allege all the elements of the crime charged. In that case the state argued that the omission was cured by the statement at the end of the indictment that the defendant "did * * * kill and mur-

der, contrary to the form of the statute." In rejecting this argument, the court stated:

"* * * this statement of a legal conclusion can not by the settled rules of pleading in criminal cases, supply the omission of any material and essential ingredient of the offense in the direct averments descriptive of the overt act of the party stated as the crime." *Fouts* v. *State, supra,* at 121.

The numerical designation of the applicable statute is nothing more than a legal conclusion. It is a conclusion that the acts charged in the complaint constitute a violation of the designated statute. As a conclusive term the numerical designation may not be used to cure a failure to charge an essential element of the crime in the direct averments of the complaint. In *State* v. *Culp* (1971), 32 Ohio App. 2d 39, an affidavit which designated the statute under which the defendant was charged was held invalid because it failed to allege an element of the crime charged. Although in *Culp* the court did not specifically address the issue of whether or not a numerical designation of a statute could cure a failure to aver an essential element of the crime, the court's decision would be inconsistent with finding such a curative effect in the numerical designation. The numerical designation of a statute under which a defendant is charged will not cure a complaint which is defective due to a failure to charge all the essential elements of the crime.

The omission of a material element of the crime from a complaint renders a complaint invalid, and where the defendant objects to such omission prior to submission of the case to the jury, such complaint may not form the basis of a conviction. *State* v. *Cimpritz, supra*; *Harris* v. *State* (1932), 125 Ohio St. 257; *Lima* v. *Ward* (1966), 8 Ohio App. 2d 177, rev. on other grounds; *State* v. *Latham* (1964), 120 Ohio App. 176, appeal dism. 177 Ohio St. 73. Since the complaint upon which the appellant's conviction is based fails to charge an essential element of the crime of pandering obscenity, it fails to state an offense under the laws of Ohio and appellant's conviction must be re-

versed. Appellant's first assignment of error is well taken.

Appellant's second assignment of error is that at her trial the state failed to prove an essential element of the crime of pandering obscenity—that she had knowledge of the character of the movie.

Before the state can constitutionally convict a person of pandering obscenity, the First Amendment to the United States Constitution requires that the state prove that the person had knowledge of the contents of what he was selling. *Smith* v. *California* (1959), 361 U. S. 147. This constitutional requirement, however, does not mean that the state must prove that the defendant knew the materials were legally obscene or even that the defendant had actual knowledge of the specific content of the material he was selling. It is sufficient if the state shows that the defendant knew of the character of the material. *Hamling* v. *United States* (1974), 418 U. S. 87, *reh. den.* 419 U. S. 885; *Mishkin* v. *New York* (1966), 383 U. S. 502, *reh. den.* 384 U. S. 934; *United States* v. *Rossen* (1896), 161 U. S. 29; *United States* v. *Hill* (5th Cir., 1974), 500 F. 2d 733, *cert. den.* 420 U. S. 952; *United States* v. *Thevis* (5th Cir., 1973), 484 F. 2d 1149, *cert. den.* 418 U. S. 932, *reh. den.* 419 U. S. 886. Consistent with this constitutional mandate of the First Amendment, the statute under which the appellant was convicted makes "knowledge of the character of the material" an element of the crime of pandering obscenity. The appellant alleges that the state failed to prove this element in that it failed to prove that she had knowledge of the character of the movie.

In proving that a defendant had knowledge of the character of obscene material the state may rely solely on circumstantial evidence. *Smith* v. *California, supra*; *State* v. *American Theatre Co.* (Neb. 1975), 227 N. W. 2d 390. In *Smith* v. *California, supra* at 154, the United States Supreme Court pointed out that:

"Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant

the inference that he was aware of what a book contained, despite his denial.''

At the trial the state introduced evidence that the store where the movie was exhibited was divided into two sections. The front of the store was basically a gift shop and the back of the store was devoted to adult books, magazines, movies and other items dealing with sexual matters. There was also testimony that the rear portion of the store may have had a sign warning anybody under twenty one not to enter. The state showed that on the two days that the officers went to the store the appellant was the only employee in the store; that she could see the adult magazines from the cash register; that she had a key to the movie projectors; that prior to leaving the store she checked the rear portion of the store to determine if any customers were there; and that she secured the store when the officers arrested her. Although the state might have done a better job in proving that the appellant had knowledge of the character of the movies, from the evidence presented at the trial the jury could have inferred beyond a reasonable doubt that the appellant had knowledge of the character of the movie. Appellant's second assignment of error is overruled.

Appellant's third assignment of error is that the trial court erred in failing to instruct the jury that knowledge of the character of the film was an essential element of the offense. In a criminal case the trial judge must instruct the jury on all ''matters of law necessary for the information of the jury in giving its verdict.'' R. C. 2945.11. A review of the trial judge's instructions to the jury reveal that although she defined ''knowingly'' for the jury, she never instructed the jury that knowledge of the character of the film was an element of the offense with which the appellant was charged. Knowledge of the elements of a crime is essential if the jury is to properly render a verdict. Appellant's third assignment of error is well taken.

Appellant's fourth assignment of error is that the movie was seized in violation of her constitutional rights

and that it should have been suppressed under the rule laid down in *Mapp* v. *Ohio* (1961), 367 U. S. 643. It is undisputed that the movie was seized pursuant to a warrant. The appellant, however, contends that the warrant was invalid for two reasons:

I. Seizure of the film violated defendant's First 'and Fourth Amendment rights because the judge who issued the warrant had not been shown the film prior thereto.

II. Seizure of the film violated defendant's Fourth Amendment rights because the affidavit failed to establish probable cause.

The first ground is controlled by our decision in the unreported case of *State of Ohio* v. *Frank Turoso*, No. 34623, Court of Appeals for Cuyahoga County, decided, April 8, 1976. In *Turoso* we held that a judge is not required to view a film alleged to be obscene prior to issuing a warrant for its seizure.

Appellant's second ground for suppression is also without merit. The appellant contends that the affidavit which formed the basis for issuance of the warrant was insufficient to establish probable cause. We cannot rule on this issue because the appellant has failed to place the affidavit in the record either on appeal or at the suppression hearing. Since the affidavit is not in the record we cannot determine if it contained sufficient information to establish probable cause. For the reasons stated above appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error is that Ohio's definition of obscenity, R. C. 2907.01(F), is both overbroad and vague. The appellant argues that the statute is vague because it uses terms such as "tendency to arouse lust," "tends to represent human beings as mere objects of sexual appetite," and "extreme or bizarre violence, cruelty or beastality." There is nothing vague about these terms. In *Hollington* v. *Ricco* (1973), 40 Ohio App. 2d 57, we held that the use of similar terms in a prior statutory definition of obscenity did not render the definition void for vagueness. As we stated in *Hollington, supra,* at 64:

"The vagueness argument has its roots in the Fifth and Fourteenth Amendments Due Process clauses. As the court stated in *Giaccio* v. *Pennsylvania* (1966), 382 U. S. 399, 402-03, 'a law fails to meet the requirements of the Due Process clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case'."

R. C. 2907.01(F) is not "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." A reading of R. C. 2907.01(F) shows that the statute is extremely precise in defining what conduct is prohibited.

Appellant also argues that the statute is overbroad because it defines material as obscene without requiring that the tests in *Miller* v. *Calfiornia* (1973), 413 U. S. 15, be satisfied. In *Miller* v. *California, supra,* the Supreme Court held that the following criteria must be satisfied before material may be considered obscene:

I. The average person applying contemporary community standards finds the work taken as a whole appeals to prurient interest;

II. The work depicts in a patently offensive way, sexual conduct defined by state law; and

III. The work taken as a whole lacks serious literary, artistic, political or scientific value.

Arguably R. C. 2907.01(F) does not on its face incorporate all of the elements of the *Miller* test. In instructing the jury, however, the trial judge narrowed the statutory definition of obscenity by restricting it to apply only to that material that was obscene under the tests laid down in *Miller*. A state statute which does not meet the standards of *Miller* may still be valid if the *Miller* tests are incorporated into the statutory definition of obscenity by judicial construction. *Miller* v. *California* (1973), 413 U. S. 15 at 25; *Matheny* v. *State* (1975), 55 Ala. Crim. App. 119, 303 So. 2d 547, *cert. denied* (1976), 44 L. W. 3654. If R. C. 2907.01(F) is overbroad, it was properly narrowed

by the trial judge to comport with the standards laid down in *Miller* v. *California, supra,* and the appellant was not prejudiced.

Prior to the revision of the Criminal Code in 1974, Ohio's definition of obscenity was found at R. C. 2905.34. R. C. 2905.34 was similar to Ohio's present definition of obscenity with the exception that the present definition is more precise in defining what constitutes obscenity. In construing R. C. 2905.34 the Ohio Supreme Court held that the statute was constitutionally sound and that it complied with *Miller* v. *California* (1973), 413 U. S. 15. *State, ex rel. Sensenbrenner,* v. *Book Store* (1973), 35 Ohio St. 2d 220; see also *Hollington* v. *Ricco* (1973), 40 Ohio App. 2d 57. These cases support the conclusion that R. C. 2907.01(F) which is more precise and definite than R. C. 2905.34 is likewise not overboard or vague.

Appellant's fifth assignment of error is overruled.

Appellant's sixth assignment of error is that R. C. 2907.35(C) which exempts a projectionist from prosecutions for pandering obscenity denies the appellant equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. R. C. 2907.32 makes the pandering of obscene materials a criminal offense. R. C. 2907.35(C) provides, however, that "a motion picture operator or projectionist acting within the scope of his employment as an employee of the owner or manager of a theater or other place for the showing of motion pictures to the general public, and having no managerial responsibility or financial interest in his place of employment, other than wages" is not subject to prosecutions for pandering obscenity. The appellant contends that the legislature in carving out a special defense for projectionists who work in establishments that show obscene films and not providing the same defense for other similarly situated employees of those establishments violated the Equal Protection Clause of the United States Constitution.

The Equal Protection Clause of the Fourteenth Amendment does not forbid all statutory classifications but only those that do not further an appropriate governmental

interest. *San Antonio School District* v. *Rodriguez* (1973), 411 U. S. 1; *Police Department of the City of Chicago* v. *Mosley* (1972), 408 U. S. 92. The traditional test under the Equal Protection Clause is whether the classification bears a rational relationship to some legitimate state purpose. If the classification bears a rational relationship to a legitimate state purpose, it is valid. If, on the other hand, classification has no rational basis it violates the Equal Protection Clause and is invalid.

R. C. 2907.35(C) provides that "a motion picture operator or projectionist acting within the scope of his employment as an employee of the owner or manager of a theater or other place for the showing of motion pictures to the general public, and having no managerial responsibility or financial interest in his place of employment, other than wages" is not subject to prosecution under R. C. 2907.32. The appellant contends that there is no rational basis or distinguishing between a motion picture projectionist who has no managerial responsibility or financial interest other than wages in the establishment which employs him and which shows obscene pictures and a sales clerk or other employee who similarly has no managerial or financial interest in the business which employs him. We agree. R. C. 2907.35(C) in effect creates a special defense for non-managerial employees who happen to be projectionists. All other non-managerial employees may not use this defense. The only real difference between the two classes of employees is that one class is composed of projectionists and the other class is composed of non-projectionists. Such a distinction will not support R. C. 2907.35 (C) in the face of an equal protection challenge. The legitimate state interest that is furthered by the prohibition on pandering obscenity is the curtailment of the trafficking in obscene materials for commercial gain. That goal could not possibly be furthered by protecting projectionists from prosecution while leaving all other employees liable to prosecution. If the legislature wished to exempt from the scope of R. C. 2907.32 all those who were not profiting from the sale of obscene materials other than by earning

wages, then it should have exempted *all* non-managerial employees who do not have a financial interest in the business. In light of the statutory scheme employed to prevent the pandering of obscenity there is no rational basis which would justify the legislature in protecting projectionists from criminal prosecutions for pandering obscenity while leaving exposed to prosecution all other similarly situated employees. R. C. 2907.35(C) creates a classification which bears no rational relation to the furtherance of a legitimate state interest; therefore, it violates the Equal Protection Clause.

When a court determines that a statutory defense to a criminal prohibition violates the Equal Protection Clause, it has two alternative remedies it may grant. It may strike down both the defense and the criminal prohibition on the theory that striking down the defense provision alone would extend the operation of the criminal statute beyond the scope of the legislative intent, or it may strike down the defense alone if that would not defeat the legislative intent. When the criminal prohibition and the defense are enacted at the same time, it is generally held that the legislature did not intend the criminal statute to operate without the defense, and if the defense is invalid both the defense and the substantive provision will be struck. If, however, the defense was enacted as an amendment to an already existing criminal statute, the court can conclude that the invalid amendment does not affect the prior valid criminal statute and strike down only the defense. In *Davis* v. *Wallace* (1922), 257 U. S. 478, the United States Supreme Court struck down a tax statute that contained an invalid exception. In invalidating the statute the court explained the reasons for the two different approaches:

"Here the excepting provision was in the statute when it was enacted, and there can be no doubt that the legislature intended that the meaning of the other provisions should be taken as restricted accordingly. Only with that restricted meaning did they receive the legislative sanction which was essential to make them part of the statute law of the state; and no other authority is competent to

give them a larger application. Had they been enacted without the excepting provision, and had it been embodied in a subsequent amendatory act, a different situation would be presented,—one in which that provision would have no bearing on the meaning or scope of the others,—because an existing statute cannot be recalled or restricted by any thing short of a constitutional enactment. This was recognized in *Truax* v. *Corrigan* (December 19, 1921, 257 U. S. 312, ante, 254, —— A. L. R. ——, 42 Supp. Ct. Rep. 124), where when an amendatory exception proved unconstitutional, we held that the original statute stood wholly unaffected by it." *Davis* v. *Wallace, supra,* at 484.

The case at bar comes under the rule that would allow us to strike down only the defense provision. In January of 1974, when the new Criminal Code came into effect, it contained both R. C. 2907.32 prohibiting the pandering of obscenity and R. C. 2907.35(C) which protected projectionists from prosecutions under R. C. 2907.32. But the projectionists' defense contained in R. C. 2907.35 (C) did not always exist side by side with the prohibition on pandering obscenity. Under various Ohio Statutes stretching back into the Ohio General Code pandering obscenity has been prohibited. The specific immediate predecessor of the current statute was enacted in 1970. It was not until 1973, however, that the defense for projectionists which eventually became R. C. 2907.35 (C) was enacted into law. For years, the legislature had seen fit to punish panderers of obscenity without affording projectionists any special protection. This brief legislative history leads us to conclude the legislature clearly intended the prohibition against pandering obscenity to stand even if the defense for projectionists was held invalid. Accordingly, we hold that R. C. 2907.35(C) is invalid and must fall, but R. C. 2907.32 is still valid and of full force and effect.

Appellant's final assignment of error is that the movie is not obscene. In judging the obscenity of the movie, the court must apply the three criteria laid down in *Miller* v. *California, supra,* in conjunction with Ohio's statutory definition of obscenity in R. C. 2907.01(F). Upon

viewing the movie film in question this court conclusively finds that its sole appeal is to prurient interest, that it is a patently offensive portrayel of sexual conduct, and that taken as a whole it lacks any serious literary, artistic, political or scientific value. The final assignment of error that it is not obscene is totally without merit.

The appellant's first and third assignments of error, however, are well taken.

*Judgment reversed.*

JACKSON, C. J., and PARRINO, J., concur.