JOURNAL ENTRY and OPINION
Defendant-appellant Charles E. Wellman, Jr. appeals from his convictions after a jury trial on one count of rape and one count of felonious sexual penetration. Appellant also appeals from the trial court's subsequent determination classifying him as a sexual predator.
In his five assignments of error, appellant challenges the trial court's instructions to the jury, the effectiveness of his trial counsel's assistance, the weight of the evidence upon which his convictions are based, and the trial court's ultimate classification of him.
This court has examined the record and finds that although appellant's conviction for rape was based upon the evidence, his conviction for felonious sexual penetration was improper. This court further finds appellant's defense counsel rendered appellant adequate assistance at trial. Finally, the trial court's determination finding appellant to be a sexual predator is appropriate. Appellant's conviction for rape and the trial court's order of classification, therefore, both are affirmed. Appellant's conviction for felonious sexual penetration is vacated.
The record reflects that in the spring of 1988 appellant, who was born in 1970, met a thirty-four-year-old woman, Carolyn Huisman, at his brother's funeral.
Carolyn recently had separated from her husband of approximately thirteen years, Stephan Huisman. As a result of the estrangement, Stephan had moved out of the couple's home, the upper portion of a double house located at 10605 McCracken Road in the City of Garfield Heights, Ohio.
The Huismans had two children: Angel, born in May, 1976, and Stephan II, born in 1979. After their father moved from the home, the children remained with Carolyn, who obtained employment at a nearby service station.
Shortly after meeting Carolyn, in spite of the age difference between them, appellant began to see her socially. Carolyn's friends and family soon thought of appellant as her "boyfriend."[1]
By the summer of 1988, appellant had "moved in" with Carolyn and her children.
This arrangement did not meet with the approval of Carolyn's friend, Sheryl Majoros. Majoros was uncomfortable with appellant; she did not like "the way he was looking at [twelve-year-old] Angel." Although Carolyn disbelieved her, Majoros thought appellant "was looking at [Angel] hungrily" and that he occasionally "stared at her with lust in his eyes."
To Angel, appellant's presence in Carolyn's life seemed initially beneficial since Carolyn did not "argue" with him a much as she had with her husband. However, appellant's behavior began to cause Angel to feel "funny"; he seemed to be "[a]lways trying to get close to" her and often would "find ways to touch" her.
Appellant eventually was able to approach Angel when she was alone in the bathroom. At that time, appellant "pulled [her] pants down and put his finger inside [her]." Appellant stated he "wanted to show [Angel] how [sex] would be, how it would feel."
Thereafter, sometime in early 1989, appellant came into Angel's attic bedroom, pinned her to her bed, and "put his penis in [her] vagina." Angel struggled and began to cry out. In response, appellant obtained the small "throw pillow" Angel kept on her bed and placed it over her face and mouth. Appellant sought to prevent Angel's brother from hearing her. When appellant had finished, he ordered Angel to "go take a bath," then watched over her until she had finished bathing.
On March 3, 1989 some members of the Garfield Heights Police Department responded to Carolyn's home in response to a "domestic complaint." Although no charges were filed, Carolyn went to a hospital emergency room to be treated for an injury to her hand. The younger Stephan Huisman observed that his mother had been "screaming real loud" at appellant and had attempted to strike appellant but missed him and instead struck "a wooden clock," thereby fracturing her hand. Appellant moved out of Carolyn's home that evening.
Within a week or two, the Huismans lost contact with appellant. Approximately one year later, Angel informed her younger brother of the incidents appellant had perpetrated upon her, but she requested secrecy concerning them since she was "afraid" her mother would not understand how they had occurred.
Angel eventually conveyed some information about the incidents to her father; however, by that time, appellant's whereabouts were unknown and Huisman was unaware of any further action he could take on his daughter's behalf. During her high school years, Angel confided the "details" of the incidents to her girlfriend, Laura Trabert.
On September 24, 1997 Trabert requested Angel accompany her to a "blood bank" located on West 25th Street in the City of Cleveland. While the two young women were waiting to give blood, Angel indicated to Trabert a man standing nearby, said appellant's name, and stated, "That's him."
Trabert immediately realized Angel was referring to the confidences she had shared; therefore, Trabert watched appellant closely while Angel attempted to summon someone in her family. Angel was eventually able to contact her boyfriend. Upon the boyfriend's arrival, the two of them left Trabert and followed appellant as he left the blood bank. Angel and her boyfriend drove away after they observed appellant enter the yard of a house located on West 7th Street.
Angel's encounter with appellant reawakened strong feelings that she found hard to ignore. On April 24, 1998 Angel went to the Garfield Heights Police Department. On that date, she made a statement to Det. William Disbrow concerning the incidents that had occurred when appellant lived with Carolyn.
Disbrow thereafter obtained photographs of appellant. When Disbrow displayed the photographs to the female resident of the house located on West 7th Street in Cleveland, Disbrow was told appellant was unknown to her. However, it was later determined both the woman and her husband were close friends of appellant.
Appellant subsequently was arrested as the result of a traffic matter.
On August 19, 1998 the Cuyahoga County Grand Jury issued an indictment against appellant charging him with two counts as follows: (1) rape, R.C. 2907.02(A) and (2) felonious sexual penetration, R.C. 2907.12. The dates of the offenses were stated as "1988 or 1989."
Appellant entered pleas of not guilty to the charges and retained counsel to represent him. Following several pretrial hearings, appellant's case proceeded to a jury trial on January 25, 1999.
The state presented the testimony of Det. Disbrow, Sheryl Majoros, Angel Huisman, Stephan Huisman, Stephan Huisman II, Laura Trabert, and the records custodian of the West 25th Street blood bank. Appellant presented the testimony of his forty-one-year-old wife, his wife's two daughters, and his younger brother. Appellant, twenty-nine years old by the time of trial, also testified on his own behalf.
The jury subsequently returned verdicts of guilty on both counts. Following a presentence investigation and report, the trial court sentenced appellant to consecutive terms of incarceration of eight to twenty-five years. The trial court also held a hearing to determine appellant's status pursuant to R.C.2950.09(B)(1). Thereafter, the trial court determined appellant to be a sexual predator.
Appellant has filed a timely appeal from both his convictions and the trial court's classification of him as a sexual predator. He presents five assignments of error for review.
Appellant's first assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN INSTRUCTING THE JURY ON FELONIOUS SEXUAL PENETRATION UNDER R.C. 2907.12 BECAUSE A FINGER WAS NOT AN OBJECT AS THE CRIME WAS DEFINED AT THE TIME OF THE OFFENSE.
Appellant argues the trial court improperly instructed the jury concerning the elements of the crime of felonious sexual penetration. He contends that since the evidence established the crime was committed prior to September 27, 1989, the jury should not have been instructed that the insertion of "a part of the body * * * to wit, a finger" into the victim's vaginal cavity constituted prohibited conduct pursuant to R.C. 2907.12. Appellant is correct.
Prior to September 27, 1989, the crime of felonious sexual penetration was defined thusly:
 (A) No person without privilege to do so shall insert any instrument, apparatus, or other object into the vaginal or anal cavity of another, when any of the following apply:
 (1) the offender purposely compels the other person to submit by force or threat of force.
* * *
 (3) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.
The Ohio Supreme Court specifically interpreted the words of this statute to exclude animate objects such as fingers. State v.Hooper (1979), 57 Ohio St.2d 87. Therefore, since it was committed before March 1989, appellant's specific action upon Angel in the bathroom of her home was not in violation of R.C. 2907.12. Statev. Dehler (July 14, 1994), Cuyahoga App. No. 65716, unreported; cf., State v. Mruk (May 9, 1997), Lucas App. No. L-96-075, unreported.
Plain error exists when a jury receives improper instruction concerning an essential element of a crime and it is clear that, but for the error, the outcome clearly would have been otherwise.State v. Cooperrider (1983), 4 Ohio St.3d 226 at 227; State v.Brown (1993) 85 Ohio App.3d 716 at 723; State v. Burgun (1976),49 Ohio App.2d 112 at 121; State v. Mulford (Mar. 18, 1993), Franklin App. No. 92AP-667, unreported.
Since the jury in this case could not have found appellant guilty of the second count of the indictment had it received proper instruction concerning what constituted the specific elements of the offense at the time it was committed, appellant's first assignment of error is sustained.
Appellant's second assignment of error states:
 CHARLES WELLMAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEEN AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
Appellant argues his trial counsel was ineffective for his level of advocacy during his representation of appellant. Appellant cites several instances that he claims illustrate counsel's deficient performance; however, this court does not agree with appellant's criticisms.
A claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, that prejudice arises from counsel's performance. State v. Bradley (1989),42 Ohio St.3d 136, syllabus 2; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, syllabus 3.
The burden is on appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.; see, also, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. The record in this case fails to demonstrate both requirements of a successful challenge to trial counsel's actions.
Appellant first takes issue with counsel's failure to request dismissal of count two of the indictment on the appropriate grounds. Appellant asserts counsel's failure both precludes an appellate argument disputing the sufficiency of the evidence and proves counsel had an inadequate familiarity with the applicable law. However, in view of this court's disposition of appellant's first assignment of error, appellant cannot establish his counsel's actions in this regard are prejudicial. State v. Mruk, supra.
Appellant next asserts counsel's examination and cross-examination of certain witnesses at trial, including Angel, were both impotent and "cursory." The record does not support this assertion.
The record reflects counsel merely was careful not to alienate the jury by either wasting its time or attacking witnesses to whom the jury might be sympathetic. Furthermore, counsel sought to bolster the credibility of his own defense witnesses by emphasizing the detailed nature of their memories. These matter are decisions left to counsel's discretion as ones within the ambit of trial strategy. State v. Sandy (1982), 6 Ohio App.3d 37; State v. Reese
(1982), 8 Ohio App.3d 202; State v. Hunt (1984), 20 Ohio App.3d 310; State v. Saah (1990), 67 Ohio App.3d 86; State v. Coulter
(1992), 75 Ohio App.3d 219; State v. Gearing (Apr. 8, 1993), Cuyahoga App. No. 62202, unreported.
Finally, although appellant asserts counsel failed to adequately prepare for trial, the indications are otherwise. Counsel filed appropriate motions, participated in several pretrial hearings, and, on the day of trial, was not only fully prepared to proceed but gave a succinct and eloquent opening argument.
On the record before this court, therefore, appellant cannot demonstrate he received ineffective assistance of counsel at his trial. State v. Bradley, supra; State v. Corruthers (Feb. 12, 1998), Cuyahoga App. No. 72064, unreported.
Appellant's second assignment of error, accordingly, is overruled.
Appellant's third assignment of error states:
 CHARLES WELLMAN WAS DENIED HIS FREEDOM WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues the evidence cannot support his conviction for rape, essentially on the basis that the testimony of the victim, as to events that she claimed took place many years ago, was uncorroborated and thus unreliable pursuant to the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10. Appellant's argument is unpersuasive.
In Mattison, this court stated that in making the determination of whether a jury's decision is against the manifest weight of the evidence, several factors should be taken into account by a reviewing court. The stated factors were, however, "merely guidelines" and were not considered to be "hard and fast rules." Id. at 14. See, also, State v. Jordan (1992), 73 Ohio App.3d 524.
The relevant test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence was stated in State v. Martin (1983), 20 Ohio App.3d 172 at 175 as follows:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflict in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42, 192 S.Ct. 2211, 72 L.Ed.2d 652.
(Emphasis added.) See, also, State v. Thompkins (1997), 78 Ohio St.3d 380.
This court must be mindful that the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
In this case, Angel testified that during the time appellant lived with them, she and her brother were disciplined only by their parents and that the children "[g]ot along with" appellant. Thus, Angel had no motivation to lie about the incidents.
Moreover, Angel's testimony on this and many other points was corroborated by that of her brother, father and girlfriend, Laura Trabert. Angel's testimony concerning the encounter with appellant at the blood bank also was supported by documentary evidence. Finally, testimony at trial established the house on West 7th Street at which she observed appellant upon his departure from the blood bank was the residence of his "best friends."
In short, the jury properly could determine the testimony of the state's witnesses was more believable than that of appellant and his witnesses. The jury, therefore, reasonably could conclude appellant was guilty of the crime of rape. State v. Gingell
(1982), 7 Ohio App.3d 364; State v. Gearing, supra.
Since the factors of State v. Mattison, supra are met in this case, appellant's conviction is not against the manifest weight of the evidence. State v. Martin, supra.
Accordingly, appellant's third assignment of error is overruled.
Appellant's fourth assignment of error states:
 THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO PROVE "BY CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT "IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."
Appellant challenges the evidentiary basis for the trial court's decision to classify him as a sexual predator; however, in view of the applicable analysis set forth in State v. Cook (1998), 83 Ohio St.3d 425, together with the record of the trial court's consideration of the issue in this case, appellant's challenge is rejected.
The trial court ordered a presentence investigation and report and stated it considered the relevant factors as set forth in R.C.2950.09(B)(2). The trial court thereafter gave as its reasons for the determination the following: Angel's age at the time of the offenses; the fact that appellant "used his relationship with the victim's mother to facilitate" the offenses; the fact that appellant committed two separate acts over a period of time; and also appellant's use of force during the rape to ensure Angel's silence. The trial court further cited additional evidence adduced at trial, viz, appellant's "pattern" of engaging "in relationships with older women whereby he would have access" to young females.
Thus, since the record demonstrates the trial court's determination had an adequate basis, appellant's fourth assignment of error is overruled. State v. Rice (Feb. 18, 1999), Cuyahoga App. No. 72685, unreported; cf., State v. McKinsey (July 1, 1999), Cuyahoga App. No. 72798, unreported.
Appellant's fifth assignment of error states:
 THE TRIAL COURT ERRED WHEN IT CLASSIFIED THE APPELLANT AS A "SEXUAL PREDATOR" BECAUSE THE LABEL IS UNREASONABLE OR ARBITRARY IN VIOLATION OF SECTION 1 AND 2 OF ARTICLE I OF THE OHIO CONSTITUTION.
Appellant argues R.C. 2950 et seq. violate the "inalienable rights" provision of the Ohio Constitution. Appellant cites Statev. Williams (Jan. 29, 1999), Lake App. No. 97-L-191, unreported. Appellant's argument, however, is rejected.
The appellate decision appellant employs to support his argument, which this court and other Ohio appellate districts previously have declined to follow, recently has been reversed by the Ohio Supreme Court. State v. Williams (2000), 88 Ohio St.3d ___ see, also, State v. Eppinger (Mar. 11, 1999), Cuyahoga App. No. 72686, unreported; State v. Bolster (Sep. 20, 1999), Stark App. No. 1998CA00136, unreported.
Therefore, appellant's fifth assignment of error also is overruled.
Appellant's conviction and sentence for rape, and the trial court's subsequent decision to classify him as a sexual predator, are affirmed. Appellant's conviction and sentence for felonious sexual penetration are vacated.
It is ordered that appellant and appellee share equally in the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J. and JOHN T. PATTON. J. CONCUR.
 _______________________ KENNETH A. ROCCO, JUDGE
[1] Quotes are taken from the transcript of appellant's trial.