DECISION.
{¶ 1} Defendant-appellant Larry Gassett appeals his conviction for intimidation of a crime victim,[1] a third-degree felony. After a bench trial, the trial court found Gassett guilty and sentenced him to one year in prison. We affirm.
 {¶ 2} On January 23, 2004, Gassett was charged with telecommunications harrassment. The victim in that case was Lakisha Smith, Gassett's ex-girlfriend.
 {¶ 3} Smith testified that on February 13, 2004, at about 2:00 a.m., Gassett had come to her house. Smith was not home alone. She had two friends staying with her that night, Nicoya Gill and Sahara Thrower.
 {¶ 4} Gassett asked to come in and Smith let him in. Smith testified that, as soon as Gassett entered the house, he announced that he had a gun with him. She took him back to her daughter's room to talk. They began arguing about why they had ended their relationship. Gassett began trying to touch Smith. Smith told him that she did not have feelings for him anymore.
 {¶ 5} Smith testified that Gassett then told her that if she went to court, he would do something to her. She became very scared. She replied, "Oh, so now you are threatening to shoot me?" Gassett said, "Yeah." She then asked, "So you are trying to take me away from my daughter?" Gassett replied, "So now you're thinking."
 {¶ 6} Smith's friends Gill and Thrower also testified. Both provided essentially the same account that Smith had. Gill testified that Gassett had come over to Smith's house at about 2:30 in the morning. Smith took Gassett back to her daughter's room to talk. Gill testified that she heard Gassett tell Smith not to go to court or he would shoot her.
 {¶ 7} Thrower testified that Gassett had come to Smith's house at about three in the morning. Smith and Gassett went to another room and began arguing. Thrower testified that he heard Gassett threaten Smith, saying he would shoot her.
 {¶ 8} In his defense, Gassett presented four witnesses. Jimmy Phelps, Gassett's parole officer, testified that, on January 22, 2004, Smith called him and told him that Gassett was sleeping with another woman and that he had gotten into a fight with the other woman's boyfriend. Phelps told Smith that that was not a violation of Gassett's conditions of supervision. Smith then told Phelps that Gassett had threatened her over the phone and that he was smoking marijuana. Phelps had Gassett report for a drug test.
 {¶ 9} Leeandre Lee testified next. She testified that she was seventeen years old and was living with Smith at the time of Gassett's alleged offense. Lee testified that she was in Smith's home on February 13, 2004, and that Gassett did not come over that night. According to Lee, Smith had been calling Gassett's house all day, but Gassett's mother would not let him get on the phone. Finally, at two in the morning, Smith reached Gassett on the phone.
 {¶ 10} Lee also testified that Gill had left Smith's house that evening at 5:00. She further testified that Smith had asked her to lie about that night and to say that Gassett had come over and had threatened Smith.
 {¶ 11} Pierre Braswell, Gassett's cousin, testified that, on the evening in question, he and Gassett were watching television at Braswell's house until 1:00 or 1:30. When Gassett left, Braswell watched him walk to and enter his own home, which was several houses down the street.
 {¶ 12} Finally, Gassett's mother, Deborah Gassett, testified. She stated that, on the night in question, Gassett had been at her sister's house and had then come home at about 2:00 a.m. Gassett went into his bedroom and did not come out again. She testified that Smith had called her house several times that night. Gassett's mother said that she could see by the caller identification that it was Smith calling. She testified that sometimes she would not answer the phone, and, on one occasion, that she had answered and hung up right away.
 {¶ 13} In his one assignment of error, Gassett argues that his conviction was against the manifest weight of the evidence.
 {¶ 14} A challenge to the weight of the evidence attacks the credibility of the evidence presented.[2] When evaluating the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[3] The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[4]
 {¶ 15} Gassett argues that Lee's testimony contradicted that of Smith, Gill, and Thrower. He points out that Lee testified that he did not come over to Smith's house on the night in question and that Gill left Smith's house that evening at 5 p.m. Gassett also notes that, according to Lee, Smith had asked her to lie and to say that he had threatened Smith, the very story related by the state's three witnesses. In addition, Gassett argues that he had two other witnesses testify that he was with them at the time he was allegedly at Smith's house.
 {¶ 16} Certainly Lee's testimony directly contradicted that of Smith, Gill, and Thrower. But it was up to the jury to weigh the credibility of each witness. The jury was free to believe none, some, or all of any witness's testimony.
 {¶ 17} Given that three separate witnesses for the state testified to essentially the same facts — that Gassett had come over to Smith's house that night and threatened her — we are not convinced that the factfinder clearly lost its way. We conclude that Gassett's conviction for intimidation of a crime victim was not a manifest miscarriage of justice and, therefore, that it was not against the manifest weight of the evidence.
 {¶ 18} Accordingly, we overrule Gassett's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2921.04(B).
[2] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] See id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[4] See State v. Martin, supra.