JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Pamela Ghaster brings this appeal challenging her convictions for intimidation and obstructing official business. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On September 6, 2007, appellee, city of Rocky River (the "city"), charged appellant with four counts of criminal conduct: two counts of disorderly conduct in violation of R.C. 2917.11 (A) and (E), one count of intimidation in violation of R.C. 2921.04(A), and one count of obstructing official business in violation of R.C. 2921.31(A).
 {¶ 3} On December 12, 2007, a jury trial commenced. The city dismissed both disorderly conduct charges, and the trial proceeded on the intimidation and obstructing official business charges. The city presented testimony from several witnesses, including Officers Matthew Blazer and Tracey Hill, and neighborhood residents, Jeffrey Lakatos and John Seelie.
 {¶ 4} Jeffrey Lakatos testified that he is appellant's neighbor in an area of Rocky River known as the Yacht Club Basin. Mr. Lakatos testified that on September 2, 2007, he was grilling in his backyard when he overheard appellant screaming obscenities at another neighbor within earshot of his house. He testified that he took his infant daughter inside so she would not hear appellant, and then he called the Rocky River police to lodge a complaint. Mr. Lakatos *Page 4 
testified that Officers Blazer and Hill responded to his call and met him in front of his house to ask him questions. He testified that he chose to return to his house to fill out a statement because he saw appellant approaching him and he was afraid of her. Mr. Lakatos further testified that when the officers later returned to his house to retrieve his statement, they looked visibly shaken by their recent interaction with appellant. He testified that he decided to complete the statement later and bring it to the station himself, which he did.
 {¶ 5} Officer Blazer testified that he and Officer Hill responded to the call from Mr. Lakatos, at which time they drove to the Yacht Club Basin where the alleged disturbance had taken place. Officer Blazer testified that while Mr. Lakatos was explaining to him what he had heard appellant yelling, appellant approached the area where the three men were standing. He testified that appellant began telling the officers about another incident that had occurred earlier that day. Officer Blazer testified that appellant was instructed to return to her house, which she refused to do. He testified that it was department policy to interview witnesses separately. He testified that instead of returning to her home as instructed, appellant began yelling at the two officers that they were not doing their job right and that she wanted their badge numbers in order to file a lawsuit against them.
 {¶ 6} Officer Blazer testified that appellant eventually returned to her house and that he and Officer Hill continued their investigation. Mr. Lakatos *Page 5 
told them he would bring his completed police statement to the station later, so the officers began to leave the area. Officer Blazer testified that appellant returned to the scene accompanied by her husband, Earl Ghaster, and as he attempted to back out of the space where the police cruiser was parked, appellant and her husband blocked the path of the police vehicle. Officer Blazer testified that he and Officer Hill demanded several times that the couple move, which they refused to do. Within five to ten seconds, appellant moved, and Officer Blazer backed the vehicle out of the space. Officer Blazer testified that appellant then blocked the front of the vehicle, thereby preventing him from pulling forward and down the street. Again the officers demanded that she move out of the way, which she ultimately did. Officer Blazer testified that appellant was screaming and yelling at the two officers the entire time she was blocking their vehicle.
 {¶ 7} Officer Blazer testified that he returned to the Yacht Club Basin later that day to take a statement from another witness and in response to a call from appellant and her husband. He testified that he gave statement forms to appellant and her husband so that they could complete and bring them to the station, but those forms were never returned.
 {¶ 8} Officer Hill testified that he accompanied Officer Blazer on the complaint called in by Mr. Lakatos regarding appellant on September 2, 2007. He corroborated Officer Blazer's testimony with respect to appellant's behavior *Page 6 
while they were speaking with Mr. Lakatos. He testified that appellant screamed at them, threatened to file a lawsuit against them for failing to do their job, and requested Officer Hill's badge number, which he gave to her. Officer Hill testified that he repeatedly asked appellant to return to her house, saying she was not needed at that time. He testified that although appellant eventually left the scene, she reappeared shortly thereafter with her husband.
 {¶ 9} Officer Hill also corroborated Officer Blazer's testimony that appellant blocked the path of their cruiser, both as Officer Blazer attempted to back up and then pull forward from where they were parked. He testified that appellant continued to scream obscenities at them while the officers were in their car. He testified that he did not accompany Officer Blazer when he returned to the Ghaster's house later that evening.
 {¶ 10} Both officers testified that the police cruiser was equipped with a camera mounted on the dashboard, but it was not activated that evening. Officer Blazer testified that he had not been instructed on the use of the camera, and Officer Hill testified that he had been trained on a camera that operated differently than the one in the cruiser.
 {¶ 11} John Seelie, another resident of the Yacht Club Basin, testified that he observed appellant screaming at the police officers, blocking the path of their car, and not moving from behind or in front of their vehicle until Mr. Ghaster convinced her to move. Mr. Seelie testified that the confrontation between the *Page 7 
officers and appellant lasted approximately five to ten minutes. He testified that the officers remained calm while they repeatedly asked appellant to get out of their way.
 {¶ 12} Both officers and Mr. Seelie testified that Officer Blazer would have run appellant over with the police cruiser given where she was standing, first behind and then in front of the car, had he not waited for her to move.
 {¶ 13} At the close of the city's case, appellant moved for dismissal under Crim. R. 29. The court denied her motion.
 {¶ 14} Appellant presented testimony from her husband, Earl Ghaster. Mr. Ghaster testified that he and appellant arrived at their home on September 2, 2007 in the early evening and went inside. Mr. Ghaster testified that appellant left the house shortly after they had arrived home, but that he stayed inside. He testified that he had no personal knowledge of anything that occurred between appellant and the officers the first time appellant left the house. Mr. Ghaster testified that appellant returned to the house and told him the police officers wanted to talk to him. He testified that he accompanied appellant back to where the police officers were, but the officers appeared to be leaving the area. He testified that the police officers indicated that they did not want to speak with him; then the officers drove away in their vehicle. Mr. Ghaster testified that neither he nor appellant blocked their vehicle and that appellant never screamed at the officers. *Page 8 
 {¶ 15} At the close of trial, appellant again moved for dismissal under Crim. R. 29, which the court denied.
 {¶ 16} The jury found appellant guilty on both charges. The trial court sentenced appellant to 180 days in jail on each charge, to run concurrent, with 90 days to be served immediately and 90 days stayed, two years probation, and a total of $1,000 in fines ($500 on each offense), plus court costs. On December 26, 2007, appellant filed this timely appeal.
 Review and Analysis {¶ 17} Appellant raises three assignments of error for our review. For ease of discussion, we address the assignments of error out of order.
 Validity of Complaint {¶ 18} "II. The trial court erred by allowing the prosecutor to present evidence and to argue that acts outside of the complaint could be used to convict defendant and by allowing repeated prejudicial remarks to be made about defendant."
 {¶ 19} In her second assignment of error, appellant argues that the trial court erred by allowing testimony regarding acts not listed in the complaint to be introduced at trial; therefore, the criminal complaint was insufficient, and she suffered prejudice. The city argues that appellant waived her right to challenge the complaint by failing to file a timely objection and, furthermore, that the criminal complaint was sufficient under Crim. R. 3. *Page 9 
 {¶ 20} Crim. R. 3 states: "The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths."
 {¶ 21} "A valid complaint is a necessary condition precedent for the trial court to obtain jurisdiction in a criminal matter. Village of NewAlbany v. Dalton (1995), 104 Ohio App.3d 307, 311, 661 N.E.2d 1132;City of Newburgh Heights v. Hood, Cuyahoga App. No. 84001,2004-Ohio-4236, ¶ 5, citing State v. Kozlowski (Apr. 18, 1996), Cuyahoga App. No. 69138. An objection as to whether a complaint properly charges an offense may be raised at any time during the pendency of the action. Crim. R. 12(C)(2); State v. Sampson, Second Dist. No. 22214,2008-Ohio-775, ¶ 17. An action is considered to be pending until a final judgment has been rendered. Maynard v. Eaton Corp., 119 Ohio St.3d 443,446, 2008-Ohio-4542, 895 N.E.2d 145. Furthermore, appellate review of the validity of a complaint is de novo. Hood, 2004-Ohio-4236, at ¶ 5."State v. Hoerig, Seneca App. No. 13-08-39, 2009-Ohio-541.
 {¶ 22} "Generally, an indictment must allege all elements of the crime charged. State v. Jester (1987), 32 Ohio St.3d 147, 149, 512 N.E.2d 962, certiorari denied (1988), 484 U.S. 1047, 108 S.Ct. 785. If a material element identifying the offense is omitted from the indictment, it is insufficient to charge an offense. Id., citing Harris v. State (1932),125 Ohio St. 257, 181 N.E. 104; *Page 10 State v. Headley (1983), 6 Ohio St.3d 475, 453 N.E.2d 716; State v.Wozniak (1961), 172 Ohio St.517, 178 N.E.2d 800.
 {¶ 23} "The formal criminal charge whether by an indictment, an information, or a complaint under Criminal Rule 3, must contain the constituent elements of a criminal offense. While all the specific facts relied upon to sustain the charge need not be recited, the material elements of the crime must be stated.' State v. Burgun (1976),49 Ohio App.2d 112, 359 N.E.2d 1018, at paragraph one of the syllabus. `The numerical designation of the applicable criminal statute in a complaint does not cure the defect in failing to charge on all the essential elements of the crime.' Id. at paragraph two of the syllabus. `A complaint is legally sufficient when it states all of the essential elements of the offense, such that the complaint provides the defendant with reasonable notice of the nature of the offense.' State v.Sweeney (1991), 72 Ohio App.3d 404, 594 N.E.2d 1000. State ex rel. Novakv. Carroll (Sept. 2, 1999), Cuyahoga App. No. 75098; Brecksville v.Marchetti (Nov. 22, 1995), Cuyahoga App. Nos. 67719 and 67722, appeal dismissed (1996), 76 Ohio St.3d 1404, 666 N.E.2d 565." Hood, supra.
 {¶ 24} On the intimidation charge, the criminal complaint against appellant sets forth the date of the offense as September 2, 2007 and reads: "Pamela Ghaster * * * unlawfully did violate: Statute 2921.04(A), Intimidation of attorney, victim, or witness in criminal case, which states [n]o person shall *Page 11 
knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness, namely did attempt to intimidate or hinder witness Patrolman Matt Blazer by placing herself in path of Rocky River Police Cruiser 6517 * * *."
 {¶ 25} On the obstructing official business charge, the criminal complaint against appellant sets forth the date of the offense as September 2, 2007 and reads: "Pamela Ghaster * * * unlawfully did violate: Statute 2921.31(A), Obstructing Official Business, which states, [n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties, namely did place herself in the path of Rocky River Police cruiser 6517 which hampered or impeded a Police Officer's performance of lawful duties * * * ."
 {¶ 26} Both criminal complaints were authorized and filed on September 6, 2007.
 {¶ 27} As an initial matter, we are not persuaded by the city's waiver argument, since an objection to a structurally deficient indictment or criminal complaint may be raised at any time during the pendency of an action.[1] *Page 12 
 {¶ 28} We are persuaded, however, by the city's argument that the criminal complaints in this case are sufficient. The complaints against appellant set forth the date of the offenses, references to R.C. 2921.04(A) and R.C. 2921.31(A) respectively, the essential elements of both statutes, and a brief description of at least some of the conduct appellant engaged in that constituted the offenses. Furthermore, appellant did not request a bill of particulars or a more definite statement.
 {¶ 29} Appellant argues that the trial court erred by letting in testimony about additional acts, not listed in the complaint and that she was not on notice of evidence the city planned to use against her. We find that the acts outside the complaint, including appellant screaming at the police officers and threatening to file a complaint against them, were related to appellant's conduct in committing the underlying offense, and were properly admitted at trial.
 {¶ 30} On October 15, 2008, appellant filed a supplemental brief, extending the argument on her second assignment of error. She challenges the trial court's decision to limit her cross-examination of Officer Blazer on whether he or the prosecutor filed the criminal charges against her. This argument is without merit. *Page 13 
 {¶ 31} Minor criminal prosecutions may be initiated by complaint as provided for by Crim. R. 3. The prosecuting attorney or other chief legal officer is responsible for the prosecution of the case. See State v.Luther, Ashtabula App. No. 2003-A-0130, 2005-Ohio-950.
 {¶ 32} The sworn complaints were made and signed by Officer Blazer. This process is completely lawful on misdemeanor charges. That Officer Blazer signed the criminal complaints has no relevance to the charges against appellant, and it was not error for the trial court to cut short appellant's cross-examination on this point. A police officer is not qualified to testify on legal questions, and Officer Blazer had already described on the record the steps he took in swearing out the complaints.
 {¶ 33} It is our belief that appellant's line of questioning was designed to confuse the jury on an issue that is irrelevant to a determination of guilt. Appellant's second assignment of error is overruled.
 Crim. R. 29 Motion {¶ 34} "I. The trial court erred in not granting defendant's Rule 29 motion on the intimidation charge."
 {¶ 35} In her first assignment of error, appellant argues that the trial court erred in denying her Crim. R. 29 motion as to the intimidation charge. Specifically, appellant argues that the city failed to present sufficient evidence that she threatened Officer Blazer. We are not persuaded. *Page 14 
 {¶ 36} Under Crim. R. 29, a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. "A motion for judgment of acquittal under Crim. R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 37} Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), Cuyahoga App. No. 65356. In State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence of support a conviction:
 {¶ 38} "[T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Eley (1978), 56 Ohio St.2d 169." See, also, Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct 2781, 61 L.Ed.2d 560. *Page 15 
 {¶ 39} Appellant was convicted of the misdemeanor charge of intimidation in violation of R.C. 2921.04(A), which states: "No person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness." She argues that a conviction under this statute requires evidence that the defendant threatened a witness. We disagree.
 {¶ 40} Appellant cites Ohio Supreme Court case law for the proposition that a charge of intimidation requires evidence of a threat. Appellant's interpretation of the applicable case law is misguided, as is her reliance on case law for felony convictions for intimidation.[2] InState v. Cress, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, the Ohio Supreme Court held that threatening a witness, by its very nature, constituted intimidation; the court did not hold that intimidation requires a showing that a witness was threatened.[3]
 {¶ 41} "R.C. 2921.04(A) states a defendant is in violation of said provision if he or she knowingly attempts to intimidate or hinder a crime victim. There is no *Page 16 
requirement of a threat. * * * While the majority of fact patterns concerning R.C. 2921.04(A) * * * do contain overt threats, we are not aware of an appellate court that, to date, has required the making of a threat in order to sustain a conviction under R.C. 2921.04(A)."State v. Simpson, Franklin App. No. 07AP-194, 2007-Ohio-7018 . See, also, State v. Munz, Cuyahoga App. No. 79576, 2002-Ohio-675 (conviction under R.C. 2921.04(A) upheld where the defendant called the victim of his domestic violence charge and said he would commit suicide if she continued with the charges).
 {¶ 42} In this case, the city produced evidence that appellant attempted to intimidate or hinder the officers, who were attempting to investigate the call made by Mr. Lakatos. Appellant used abusive language towards the officers, frightened them, and prevented them from moving their cruiser, thereby attempting to hinder their ongoing investigation. There was also evidence that appellant threatened to file a lawsuit against the officers. This evidence is sufficient to sustain a conviction for a misdemeanor intimidation. Appellant's first assignment of error is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 43} "III. A) The evidence was insufficient to support the conviction; B) the verdict was against the manifest weight of the evidence."
 {¶ 44} In her third assignment of error, appellant challenges both of her convictions, arguing that the city failed to present sufficient evidence on both *Page 17 
charges and that the jury's verdicts were against the manifest weight of the evidence. We disagree.
 {¶ 45} As stated in our analysis of appellant's first assignment of error, an appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541.
 {¶ 46} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded *Page 18 
verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation.
 {¶ 47} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 48} It is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Hence we must accord due deference to those determinations made by the trier of fact. *Page 19 
 {¶ 49} With respect to the obstruction charge, [4] appellant argues she was not hindering the officers' investigation by standing in front of, then behind, their police car, but was in fact assisting them with their investigation.
 {¶ 50} R.C. 2921.31(A) states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 51} The evidence presented by the city was that, at the time of the incident, the officers were responding to a complaint called in by Mr. Latakos; that the officers asked Mr. Latakos to fill out a written statement; that appellant began yelling at the officers and threatening to sue them; that when the officers returned to their cruiser and tried to drive away, appellant blocked the path of the police vehicle by standing first in front of, then behind it.
 {¶ 52} Viewing this evidence in a light most favorable to the prosecution, it is sufficient to show that appellant acted with purpose to prevent or delay the police officers from their lawful duties, i.e., completing their investigation. Appellant's suggestion that the officers were no longer acting in their official capacity because they were leaving the scene is absurd. The investigation was *Page 20 
ongoing, especially in light of the facts that Mr. Latakos had not completed his written statement, Officer Blazer was dispatched back to the Ghaster residence, and Officer Blazer returned to the scene to speak with another witness.
 {¶ 53} Appellant next argues that the jury's verdicts were against the manifest weight of the evidence. We disagree.
 {¶ 54} As it relates to both charges, the city presented evidence that Officers Hill and Blazer were in the Yacht Basin Club area responding to a resident's called-in complaint about a neighbor screaming obscenities at another neighbor. The city presented evidence from several witnesses that as the officers began their investigation of the complaint, appellant screamed and yelled obscenities at the officers; that appellant refused to back away from them and their cruiser when she was asked to; and that appellant blocked the officers' cruiser as they attempted first to back out, then to pull away from, the spot where the cruiser was parked.
 {¶ 55} Appellant presented evidence in the form of her husband's testimony that he did not witness appellant's and the officers' initial interaction; that he came outside to speak with the officers at appellant's request; that he and appellant were near the officers' car as they were pulling out of the parking space; and that appellant was not screaming obscenities at the officers nor was she blocking their way. *Page 21 
 {¶ 56} Mr. Ghaster's testimony clearly contradicted the testimony of all of the city's witnesses. It was up to the jury, and only the jury, to weigh the credibility of each witness. The jury was free to believe none, some, or all of any witness's testimony. See, State v.Gassett, Hamilton App. No. C-040462, 2005-Ohio-2340.
 {¶ 57} Appellant also argues that Officer Blazer cannot be both a victim of and a witness to a crime. We do not agree. Appellant prevented Officer Blazer from completing his investigation, as well as prevented him from leaving the scene to continue the investigation.
 {¶ 58} The jury had an opportunity to weigh the testimony and assess the credibility of all the witnesses. We conclude that neither of appellant's convictions was a manifest miscarriage of justice; therefore, they were not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 22 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] It is not clear what version of Crim. R. 3 the city cites in its brief (p. 24); Crim. R. does not include language about the timeliness of objections to a criminal complaint. Furthermore, Crim. R. 12(C)(2) clearly states that challenges to the charge in an indictment may be raised at any time during the pendency of the proceeding.
[2] For a felony conviction under R.C. 2921.04(B), the statute states: "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness." (Emphasis added.)
[3] The trial court in the case at bar acknowledges that State v.Cress stands for the proposition that a charge of intimidation "prohibits the threatening of witnesses," but that the "opinion does not go on to further say that the threatening of witnesses in the (A) section is mandatory * * *."
[4] In her first assignment of error, appellant argues that the trial court erred in denying her Crim. R. 29 motion as to the intimidation charge. She repeats that argument here, and we have already overruled it. *Page 1