JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Pamela Ghaster brings this appeal challenging her conviction for menacing by stalking. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On October 1, 2007, appellee, the city of Rocky River (the "city"), charged appellant with one count of menacing by stalking in violation of R.C. 2903.211 (A)(1). On April 16, 2008, a jury trial commenced. The city presented testimony from several witnesses, including the alleged victim, Laurie Rauser, her husband, Richard, and Dr. Shila Mathew, the therapist Mrs. Rauser saw for treatment.
 PERTINENT FACTS {¶ 3} Mrs. Rauser's testimony revealed the following: Appellant and Mrs. Rauser were neighbors in the Yacht Club Basin area of Rocky River, Ohio. Up until October 2006, Mrs. Rauser considered her relationship with appellant to be "neighbor friendly." In October 2006, Mrs. Rauser received a subpoena to appear in court to testify on behalf of appellant. Appellant's attorney contacted Mrs. Rauser, and Mrs. Rauser told him that her testimony may damage appellant's case rather than help her, and Mrs. Rauser indicated that she was not planning to come to court. After Mrs. Rauser's conversation with appellant's attorney, appellant left between nine and eleven voicemail messages for Mrs. Rauser, ranging from begging her to come to court to threatening legal proceedings *Page 4 
against her if she failed to come to court. Mrs. Rauser never spoke with appellant directly about the subpoena. According to Mrs. Rauser's testimony, the voicemail messages from appellant made her fearful of appellant.
 {¶ 4} Mrs. Rauser also testified that after the October 2006 phone calls, appellant began harassing her every time she left her home. She testified that on several occasions, appellant would chase her down the street, swear at her, make obscene gestures at her, take cell phone pictures of her, and threaten that Mrs. Rauser would "be sorry." Mrs. Rauser testified that appellant engaged in this behavior on 10 to 20 occasions between October and December 2006. Mrs. Rauser also testified that in January 2007, she received a voicemail message from a person she believed to be appellant, based on the voice, saying "Paybacks are a bitch." Mrs. Rauser also testified that she was afraid to leave her house because she feared appellant would hurt her or her young child.
 {¶ 5} Mrs. Rauser testified that in August 2007, allegedly in an attempt to warn her, appellant spoke with her about another neighbor who was being investigated for child pornography. Appellant left a document at the Rausers' home about an arrest warrant for the other neighbor. Appellant also left a book about birds at the Rausers' home, which was intended for their daughter.
 {¶ 6} Mrs. Rauser testified that she had little contact with appellant after the January 2007 phone call and the August 2007 incident. *Page 5 
 {¶ 7} Mrs. Rauser testified that she witnessed appellant going through her mail when appellant was allegedly assisting the replacement mailman on his route. Mrs. Rauser was informed by her hairdresser, Ms. Destro, who also cuts appellant's hair, that appellant had been asking the hairdresser personal questions about Mrs. Rauser. On another occasion, Mrs. Rauser witnessed appellant sitting on a hill behind the Rausers' house, staring at it, walking back and forth, and taking pictures of the house, for half the day. Mrs. Rauser also testified that appellant called the police to ticket some of her guests' cars, which were parked illegally on the street in front of the Rausers' house.
 {¶ 8} Finally, Mrs. Rauser testified that she sought psychiatric treatment because of the stress she was feeling due to appellant's behavior toward her and her family. She stated she was prescribed Xanax to treat her anxiety and mental distress.
 {¶ 9} Mr. Rauser testified that he witnessed appellant scream obscenities at him and his family and that he witnessed his wife's reaction to appellant's conduct when his wife curled up in a ball on the floor, crying and saying she couldn't take "it"-appellant's harassment-anymore.
 {¶ 10} Dr. Mathew testified that she saw Mrs. Rauser as a patient and treated her for mental distress. She testified that, in her opinion, Mrs. Rauser's anxiety, panic, and inability to sleep were caused by appellant's behavior toward Mrs. Rauser. *Page 6 
 {¶ 11} U.S. postal carrier, Michael McCartney, testified that appellant had helped him on his route by indicating several addresses on the street, but on cross-examination indicated that appellant never took the mail from his hands. Ms. Destro testified that appellant had asked questions about Mrs. Rauser, and she thought the two women were friends. She also testified that when she told Mrs. Rauser about her conversation with appellant, Mrs. Rauser seemed upset and asked Ms. Destro not to talk about her to appellant.
 {¶ 12} At the close of the city's case, appellant made a Crim. R. 29 motion, which the trial court denied.
 {¶ 13} Appellant called several witnesses in her defense. Jeffrey Capretto, of the Westshore Enforcement Bureau, Drug Task Force, testified that appellant was assisting him in an investigation of a suspected drug dealer in her neighborhood, not a child pornographer. He also testified that appellant compromised the investigation after she told several of her neighbors that she was involved in the case. Karen Kirk, a realtor hired by the Rausers to list their house for sale, testified that she did not know of any potential buyers that appellant scared off from buying the Rausers' house. Rocky River patrolman, George Lichman, testified that he issued tickets to cars illegally parked near the Rausers' house, and that he witnessed Mrs. Rauser become upset because she thought appellant had called the police. *Page 7 
 {¶ 14} At the close of her case, appellant again moved for a Crim. R. 29 dismissal; the trial court denied her motion.
 {¶ 15} The jury found appellant guilty, and the trial court sentenced her to 180 days in jail. Appellant's motion to stay sentencing pending appeal was denied.
 Review and Analysis {¶ 16} Appellant filed this timely appeal and raises three assignments of error for our review.
 Mistrial {¶ 17} "I. The trial court erred by not declaring a mistrial."
 {¶ 18} While Mrs. Rauser was being cross-examined by defense counsel, she responded to one of the questions about the duration of appellant's alleged conduct, by saying, "It's not stopped since she was in jail." Appellant moved for a mistrial, contending the comment was unfairly prejudicial. After hearing arguments by counsel, the trial court denied appellant's motion and instead struck the testimony and gave a curative instruction to the jury.
 {¶ 19} A trial court's denial of a motion for mistrial will not be reversed upon appeal absent an abuse of discretion. Apaydin v. ClevelandClinic Found. (1995), 105 Ohio App.3d 149, 663 N.E.2d 745. An abuse of discretion is found where a decision is so grossly violative of fact and logic that it demonstrates a *Page 8 
perverse will, a defiance of judgment, undue passion, or extreme bias.Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 482 N.E.2d 1248.
 {¶ 20} Curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial.State v. Zuern (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585. Further, juries are presumed to follow any curative instructions given by a trial court. State v. Henderson (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 21} We find that the trial court's denial of a mistrial was proper and that the trial court's decisions to strike the comment and give a curative instruction were effective remedies. Mrs. Rauser's comment was not such that we believe appellant was unfairly prejudiced. The reference to jail was limited to a single mention early on in the trial; no further mention was made by either counsel or other witnesses that appellant had spent time in jail, nor was reference made to why she had been in jail; and, the trial court gave a curative instruction that the jury is presumed to have followed.
 {¶ 22} We are not convinced appellant was prejudiced by the mention of jail, especially in light of the other evidence presented at trial.
 {¶ 23} Appellant's first assignment of error is overruled.
 Crim. R. 29 Motion {¶ 24} "II. The trial court erred by not granting appellant's Rule 29 motion." *Page 9 
 {¶ 25} In her second assignment of error, appellant argues that the trial court erred in denying her Crim. R. 29 motions on the menacing by stalking charge. Specifically, appellant argues that the city failed to present sufficient evidence that she knowingly caused the victim to believe she would cause her physical harm, or that she knowingly caused the victim mental distress. We are not persuaded.
 {¶ 26} Under Crim. R. 29, a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 814, syllabus. "A motion for judgment of acquittal under Crim. R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 27} Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), Cuyahoga App. No. 65356.
 {¶ 28} In State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence to support a conviction: "[T] he relevant inquiry on appeal is whether any reasonable trier of fact could have found the *Page 10 
defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169." See, also, Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct 2781, 61 L.Ed.2d 560.
 {¶ 29} Appellant was convicted of menacing by stalking. R.C. 2903.211(A)(1) states: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
 {¶ 30} R.C. 2903.211(D)(1) defines, in relevant part, a "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."
 {¶ 31} R.C. 2903.211(D)(2) defines "mental distress" as "(a) Any mental illness or condition that involves some temporary substantial incapacity; (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services."
 {¶ 32} The city produced sufficient evidence that appellant engaged in a "pattern of conduct" through Mrs. Rauser's testimony. Mrs. Rauser recounted *Page 11 
receiving over nine telephone calls from appellant in October 2006; being subjected to harassing conduct by appellant when appellant would run after her car, scream obscenities at her, and make rude gestures at her on no less than ten occasions between October 2006 and January 2007; receiving a threatening phone call from appellant saying "Paybacks are a bitch"; being subjected to appellant posting herself outside the Rausers' home for half a day; being approached by appellant about a fictitious child pornographer in the area; having appellant go through the Rausers' mail; and having appellant question her hairdresser about the Rauser family. We find these incidents satisfy the "pattern of conduct" requirement.
 {¶ 33} The pivotal issue in the case is whether appellant knowingly caused Mrs. Rauser to believe she would cause her physical harm or caused her mental distress. State v. Carter, Cuyahoga App. No. 84047,2004-Ohio-5199 ("the elements of this offense can be established if the offender either causes another person to believe he will cause physical harm to them or causes them mental distress"). We find that there was sufficient evidence that appellant knowingly caused Mrs. Rauser mental distress.
 {¶ 34} It should be noted that R.C. 2903.211(D)(2)(b) does not require the prosecution to prove the victim received treatment for mental distress; however, in this case, Mrs. Rauser sought and received treatment for the anxiety, panic, *Page 12 
and stress she testified was caused by appellant's conduct. Her treating physician, Dr. Mathew, corroborated that testimony.
 {¶ 35} Appellant argues that, even if the evidence were believed, it does not support a finding that she acted knowingly to cause Mrs. Rauser mental distress. A person acts "knowingly" when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 36} Appellant's reliance on Baker v. Inman, Delaware App. No. 04CAE06045, 2004-Ohio-6133, is misplaced. In Baker, the court held there was insufficient evidence that the victim was caused mental distress; the court did not address whether the defendant's conduct was done knowingly. Id. (victim "failed to establish she suffered `some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment").
 {¶ 37} In State v. Moore (May 8, 1998), Montgomery App. No. 16223, the court affirmed the defendant's conviction for menacing by stalking under facts similar to the case at bar. The facts in Moore involve six incidents in which the defendant screamed obscenities at the victim; made obscene gestures at her; watched her for long periods of time; and in one case yelled to her, "I am going to get you." Id. There was also testimony from the victim that the defendant made her nervous when she left her home, that she was afraid of the defendant, and *Page 13 
that she thought he might hurt her. Id. In Moore, the court held that "[t]he testimony of the alleged victim * * * if believed, would persuade the average mind, beyond reasonable doubt, that [defendant] engaged in a pattern of conduct that he knew, or should have known, would cause [the victim] to believe that [he] was going to cause physical harm to her. The cumulative effect of the alleged incidents * * * was sufficient to put [the victim] in fear that [the defendant] would physically harm her, and a reasonable person in the [defendant's] position would know that." Id.
 {¶ 38} Similarly, Mrs. Rauser testified that she was afraid of appellant, appellant's conduct made her anxious, and she feared for her own and her family's safety. We find her testimony, corroborated by the testimony of her husband and Dr. Mathew, that Mrs. Rauser's stress was caused by appellant's conduct, was sufficient to show that a reasonable person in appellant's position would know that her conduct knowingly caused Mrs. Rauser mental distress.
 {¶ 39} Appellant's second assignment of error is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 40} "III. (A) The evidence was insufficient to support a conviction. (B) The verdict was against the manifest weight of the evidence."
 {¶ 41} In her third assignment of error, appellant challenges her conviction, arguing that the city failed to present sufficient evidence and that the jury's verdict was against the manifest weight of the evidence. Having already *Page 14 
overruled appellant's second assignment of error with respect to the denial of her Crim. R. 29 motion, which duplicates her argument that the evidence was insufficient to support a conviction, we now address her argument that the verdict was against the manifest weight of the evidence.
 {¶ 42} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, 457 U.S. 31, 102 S.Ct. 2211,72 L.Ed.2d 652, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 43} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in *Page 15 
resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 44} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. Hence, we must accord due deference to those determinations made by the trier of fact.
 {¶ 45} The city presented evidence through the testimony of Mrs. Rauser and her husband that appellant made numerous harassing telephone calls to them; that she chased after them while screaming obscenities and gesturing obscenely at them; that she positioned herself on a hillside in order to stare at the Rausers' house for half of a day; that she called to Mrs. Rauser several times words to the effect of "you're going to be sorry" and "you're going to jail"; that Mrs. Rauser identified appellant's voice in a voicemail message on her home phone stating "Paybacks are a bitch"; and that appellant persisted in talking about the Rausers to third parties when it should have been clear to appellant the two women were not on friendly terms.
 {¶ 46} Appellant presented evidence in the form of other witnesses' testimony that their interaction with appellant, as it pertained to Mrs. Rauser, was seemingly harmless. We do not dispute that their testimony contradicted the testimony of Mr. and Mrs. Rauser. It was up to the jury, however, to weigh *Page 16 
the credibility of each witness. The jury was free to believe none, some, or all of any witness's testimony. See State v. Gassett, Hamilton App. No. C-040462, 2005-Ohio-2340. The jury had an opportunity to weigh the testimony and assess the credibility of all the witnesses.
 {¶ 47} We conclude that appellant's conviction was not a manifest miscarriage of justice and, therefore, it was not against the manifest weight of the evidence.
 {¶ 48} Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., JUDGE
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1