[Cite as *State v. Taylor*, 2014-Ohio-3134.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100315**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL P. TAYLOR

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-569276

**BEFORE:** Blackmon, J., Jones, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 17, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Gregory Mussman
Karrie D. Howard
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Michael P. Taylor appeals his convictions, sentence, and classification as a Tier III sexual offender. Taylor assigns the following errors for our review:

> I. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
>
> II. Appellant's convictions are against the manifest weight of the evidence.
>
> III. Appellant was deprived of due process and a fair trial in violation of his state and federal constitutional rights when the trial court allowed a representative from victim impact to stand by a witness/victim during her trial testimony over appellant's objection.
>
> IV. The trial court erred by denying appellant's motion for mistrial and for providing an inadequate curative instruction during trial.
>
> V. Appellant's sentence is contrary to law and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.
>
> VI. The trial court erred by instructing the jury that it could find appellant to be a sexual offender over appellant's objection.
>
> VII. The trial court erred by ordering appellant to pay costs.

{¶2} Having reviewed the record and pertinent law, we affirm in part, reverse in part, and remand for resentencing. The apposite facts follow.

{¶3} On March 12, 2013, the Cuyahoga County Grand Jury indicted Taylor on four counts of rape with sexually violent predator specifications attached, three counts

of kidnapping with sexual motivation and sexual violent predator specifications attached, one count of gross sexual imposition, and one count of intimidation of a crime witness. Taylor pleaded not guilty to the charges at his arraignment, and after several pretrials, a jury trial commenced.

## Jury Trial

{¶4} At trial, the state presented the testimony of nine witnesses including E.W.,[1] who was 17 at the time of trial. E.W. testified that Taylor is her first cousin, the son of her Uncle Mike, and was a frequent visitor to her home.

{¶5} E.W. testified that around October 10-11, 2012, she stayed home from school because she was feeling sick. E.W. stated that between 4:00-5:00 p.m., two of her sisters, who were at home at the time, left to pick up one of the sister's children from daycare. As they were leaving, one of the sisters asked E.W. to come and lock the front door. E.W. started to lock the door when Taylor entered and said something about needing to use a phone charger.

{¶6} E.W. stated that moments after entering the house, Taylor began "touching, feeling, and grabbing her." As E.W. stated that despite her protest, Taylor continued to touch her neck and grab her buttocks, as they fell against a chair and eventually landed on the floor. As E.W. continued to protest, Taylor proceeded to pull down her pants, inserted his finger and then his penis into her vagina. E.W. said that Taylor was wearing

---

[1]The juveniles are referred to herein by their initials in accordance with this court's established policy regarding non-disclosure of identities in all juvenile cases. In this case, because all the juveniles have the same initials, we will refer to the witnesses as E.W. and E.W.1.

a condom, but she did not see when he put it on his penis. E.W. said that after a while, Taylor got up, stood over her and just stared.

{¶7} E.W. stated that Taylor threatened to "do something" to her and her mother if she told anyone, and then he left. E.W. immediately went to the bathroom, washed between her legs with soap and water and then changed her clothes.

{¶8} E.W.'s sisters returned shortly after Taylor left. An hour later, she told the younger of the two sisters that Taylor had raped her while they had gone to collect the children from the daycare. E.W. stated that they telephoned their oldest sister, who did not live with them, and she contacted the police.

{¶9} The police arrived shortly thereafter and questioned E.W. about the incident. Later, E.W. was taken by ambulance to the hospital, where she was examined by a Sexual Assault Nurse Examiner ("SANE") and had a rape kit completed.

{¶10} E.W. also testified that approximately two weeks prior to the above incident, she was at the home of her eldest sister when Taylor offered to drive her home. E.W. stated that when they left, Taylor drove in a completely different direction from the route to her house and eventually traveled to the city of Shaker Heights, Ohio. Taylor pulled into a driveway, asked if E.W. wanted to smoke marijuana, began touching her private area, and then pulled out his penis. Amidst her protest, Taylor kept touching her private area and eventually inserted his finger into her vagina. Taylor eventually drove her home after she kept pushing his hands away.

**{¶11}** E.W.'s sister, E.W.1, testified that she and all her siblings' first names begin with the letter "E." E.W.1 stated that she has known Taylor all her life and that he came to their house on a regular basis. On the day in question, Taylor entered the house as she and an older sister were leaving to get the children from daycare.

**{¶12}** E.W.1 testified that when they returned from the daycare, Taylor opened the door for them and walked towards his vehicle that was parked in the driveway. When E.W.1 entered the house, E.W. was in the bathroom with the door locked. When she emerged, E.W. looked sad, was not talking, and was not upbeat. E.W.1 stated that moments later, E.W. began crying and indicated that Taylor had raped her in their absence. E.W.1 immediately called their older sister, who contacted the police.

**{¶13}** E.W.1 testified that Taylor raped her on three separate occasions between 2007 and 2008. E.W.1 testified that the first time, Taylor came down to the basement where she was doing laundry, began kissing the back of her neck, then despite protestations, pulled down her shorts and raped her. E.W.1 stated that Taylor pulled out his penis, before ejaculating, when he heard a family friend coming down the steps.

**{¶14}** E.W.1 testified that the other two times, Taylor raped her in his truck when her mother had asked her to go to the store with him. E.W.1 stated that she always protested, but to no avail. E.W.1 told her mother, but Taylor always denied it, so nothing was done.

**{¶15}** Detective Elaine Evans, assigned to Cleveland Police Department's Sex Crime and Child Abuse Unit, testified that she was assigned to the case the day after the

incident. Detective Evans obtained statements from both E.W. and E.W.1, as well as other family members. Detective Evans also spoke via telephone with Taylor and made an appointment for him to come to her office, but he never appeared.

{¶16} Following the state's case in chief, Taylor motioned the trial court for acquittal, but it was denied, and Taylor proceeded to testify in his own defense, denying all accusations. Taylor testified that on October 10, 2012, he had been drinking hard liquor and smoking marijuana with his friend Kenyatta Hines. Taylor stated that he and Hines drove to E.W.'s home to recharge his cell phone. Taylor said that he went in the house, plugged in the phone, and went back outside to sit in the car. He stated that approximately 15 minutes later, he went back to retrieve his phone, spoke briefly with E.W., and then left.

{¶17} Hines testified that she had been drinking and smoking marijuana with Taylor on the date in question. Hines stated that Taylor was only in the house with E.W. for about two minutes when he went to place the phone on the charger. Hines testified that when Taylor went to retrieve the phone, he came back out immediately.

{¶18} The jury found Taylor not guilty of counts one through four, but guilty of counts five through nine. The jury also found Taylor guilty of the sexual motivation and sexually violent predator specification.

{¶19} At sentencing, because some of the charges were allied offenses, the state elected to proceed on counts five, seven, and nine. The trial court imposed an 11 year sentence on count five, kidnapping with sexual motivation and sexually violent predator

specification, 10-years-to-life on count seven, kidnapping with sexual motivation and sexually violent predator specification, and 36 months on count nine, intimidation of a crime victim or witness. The trial court ordered that Taylor serve the sentences consecutively.

## Sufficiency of Evidence

{¶20} In the first assigned error, Taylor argues that his motion for acquittal should have been granted because the state failed to present sufficient evidence of the elements necessary to support the convictions.

{¶21} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571, citing *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241.

{¶22} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id*.

{¶23} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶24} In the instant case, the jury found Taylor guilty of one count each of rape, gross sexual imposition, intimidation of a victim or witness, and two counts of kidnapping. Because some counts were allied offenses of similar import, the state elected that Taylor be sentenced on the two kidnapping charges and intimidation of victim or witness.

{¶25} The kidnapping offense of which Taylor was found guilty is defined in R.C. 2905.01(A)(4) as follows: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in R.C. 2907.01 * * * with the victim against the victim's will[.]"

{¶26} R.C. 2907.01 defines sexual activity as sexual conduct or sexual contact. These are further defined respectively as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus * * *; and * * * the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another * * *" and "any touching of an erogenous zone of another, including

without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶27} At trial, E.W. testified that approximately two weeks prior to the incident that eventually triggered the underlying case, Taylor, who had offered her a ride home, drove instead to the city of Shaker Heights. E.W. testified that Taylor pulled into a driveway, began touching E.W., against her will, in her private area, exposed his penis, and inserted his finger into her vagina. E.W.'s testimony, if believed, satisfies the elements of kidnapping as outlined above.

{¶28} Nonetheless, Taylor argues that the jury finding him not guilty of the rape in that instance, but guilty of the kidnapping, is inconsistent. The verdicts in this case might appear at first glance to be inconsistent because appellant was acquitted of rape, but was found guilty of kidnapping with a sexual motivation.

{¶29} However, "in criminal cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts, and acquitted on others, and the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal." *State v. Sailor*, 8th Dist. Cuyahoga No. 83552, 2004-Ohio-5207, ¶ 88, citing *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist.1985).

{¶30} The kidnapping statute "punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant." Thus, a finding of not guilty on the rape charge "is not in any sense a finding that there was no

intent or purpose to commit those crimes at the time of the abduction." *State v. Smith*, 9th Dist. Summit Nos. 23464 and 23468, 2007-Ohio-5524, ¶ 41, quoting *State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430, ¶ 17.

{¶31} Taylor also asserts that there was insufficient evidence to support the guilty verdicts for rape, kidnapping, and gross sexual imposition for the alleged incident on October 10, 2012 against E.W.

{¶32} E.W. testified that after Taylor entered the house, he began touching her neck and buttocks amidst her protestations. Taylor proceeded to kiss E.W.'s neck while attempting to pull down her shorts. E.W. stated that Taylor overpowered her, they fell to the ground, and he inserted his finger and then his penis into her vagina. E.W. said she unsuccessfully tried to push him off and her pleas for him to stop went unheeded.

{¶33} After viewing the evidence in a light most favorable to the prosecution, the above evidence, if believed, would support the conclusion that Taylor committed the actions alleged. As such, any rational trier of fact would have found the essential elements of the charges that led to his convictions proven beyond a reasonable doubt. Consequently, the trial court did not err when it denied Taylor's motion for acquittal. Accordingly, we overrule the first assigned error.

## Manifest Weight of the Evidence

{¶34} In the second assigned error, Taylor argues his convictions are against the manifest weight of the evidence.

**{¶35}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id.* at ¶ 25.

**{¶36}** An appellate court may not merely substitute its view for that of the factfinder, but must find that "'in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Walker*, 8th Dist. Cuyahoga No. 99239, 2013-Ohio-3522, quoting *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

**{¶37}** Based on our resolution of the first assigned error where we found that Taylor's convictions were supported by sufficient evidence, we conclude that this is not the exceptional case where the evidence weighs heavily against the convictions. Much to the contrary, Taylor's convictions are not against the manifest weight of the evidence.

**{¶38}** Nonetheless, Taylor argues he was convicted solely on inconsistent testimony. Specifically, Taylor claims the lack of blood at the crime scene, the lack of injuries on E.W., and the lack of his DNA on or inside E.W., supports his argument that his convictions were against the manifest weight of the evidence.

**{¶39}** As an initial matter, there is no requirement, statutory or otherwise, that a victim's testimony be corroborated as a condition precedent to a rape conviction. *State v. Sklenar*, 71 Ohio App.3d 444, 447, 594 N.E.2d 88 (9th Dist.1991), citing *State v. Gingell*, 7 Ohio App.3d 364, 365, 455 N.E.2d 1066 (1st Dist.1982); *State v. Love*, 49 Ohio App.3d 88, 91, 550 N.E.2d 951 (1st Dist.1988). "Sexual conduct" does not require proof of trauma. *State v. Barnes*, 1st Dist. Hamilton Nos. C-790595, C-790622, and C-790636, 1980 Ohio App. LEXIS 10250, 19 (Oct. 22, 1980). In other words, a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury. *State v. Flowers*, 10th Dist. Franklin No. 99AP-530, 2000 Ohio App. LEXIS 1933 (May 4, 2000), citing *State v. Van Buskirk*, 8th Dist. Cuyahoga No. 57800, 1994 Ohio App. LEXIS 4409 (Sept. 29, 1994).

**{¶40}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and

the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

**{¶41}** After independently reviewing the entire record and weighing the aforementioned evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we overrule the second assigned error.

### Victim Impact Representative

**{¶42}** In the third assigned error, Taylor argues he was denied a fair trial when the trial court permitted a representative of the Victim Impact Unit to stand with E.W. while she testified. In the instant case, the trial court asked E.W. whether she need the representative to stand nearby and E.W. indicated she needed the assistance.

**{¶43}** Evid.R. 611 empowers a trial court with broad discretion in controlling the mode and order of interrogating witnesses and presenting evidence "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Thus, a procedure implemented by a trial court to elicit testimony from

a witness will not be disturbed on appeal absent a showing that the court abused its discretion. *State v. Johnson*, 38 Ohio App.3d 152, 154, 528 N.E.2d 567 (5th Dist.1986).

**{¶44}** A review of the record reveals that the trial court's decision to ask E.W. whether she wanted the representative from the Victim Impact Unit to stand nearby, after E.W. began crying during cross-examination, neither diminished Taylor's constitutional right to confront his accuser nor prejudiced his right to a fair trial.

**{¶45}** Many courts have permitted a variety of methods to facilitate the presentation of the testimony of the child-victim witness in cases of sexual assault or abuse. In *Johnson*, *supra*, the court held that it was neither a constitutional violation nor an abuse of the trial court's discretion to allow an eight-year-old victim to sit on the lap of a relative during the presentation of the victim's testimony. One court permitted a five-year-old victim to sit on his father's lap while testifying. *State v. Barnhart*, 12th Dist. Clermont No. CA91-08-066, 1992 Ohio App. LEXIS 3770 (July 20, 1992). That court also permitted an adult to sit beside a 13-year-old victim during the presentation of her testimony. *State v. Walton*, 12th Dist. Clermont No. CA91-03-022, 1991 Ohio App. LEXIS 5277 (Nov. 4, 1991). Under this case law, Taylor's contention that his rights were violated fails.

**{¶46}** The victim was a minor testifying about being raped by her cousin and conceivably testifying in a courtroom where other family members are present, some of whom were possibly aligned against the minor. Accordingly, the court's action was

consistent with other cases involving a minor's testimony. Consequently, we find no prejudice to Taylor and overrule his third assigned error.

## Denial of Motion for Mistrial

{¶47} In the fourth assigned error, Taylor argues the trial court erred by failing to grant a mistrial because the curative jury instruction was inadequate.

{¶48} The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, ¶ 36, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). An "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶49} A mistrial should not be ordered in a criminal case "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). Rather, the granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶50} In the instant case, the record reveals that in its opening statement, the state declared that Taylor "took his cousin's virginity" and during its direct examination of E.W., the state asked questions about E.W.'s virginity. On cross-examination, defense

counsel asked questions about E.W.'s virginity. Following defense counsel's questions, the trial court instructed the jury that this line of questioning was improper.

{¶51} Thereafter, defense counsel indicated that it was the state who had opened the door to elicit testimony regarding E.W.'s virginity, but the trial court's statement during his cross-examination gave the jury the impression that defense counsel might have done something wrong. Therefore, defense counsel moved for a mistrial. The trial court denied the motion and indicated that it would issue a curative instruction to the jury. The trial court issue the following pertinent instructions:

> Ladies and gentlemen of the jury, before we proceed, earlier in the trial there was some discussion with reference to [E.W.] * * * and some of those questions were made with reference to whether or not she had prior — engaged in prior sexual activity.
>
> The court then stopped this line of questioning, indicating to counsel that the court thought that line of questioning was improper and cited the rule that said that.
>
> The court will inform you now that any questioning with reference to that was improper, whether or not it was done by the government or the defense.

Tr. 464.

{¶52} Curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial. *State v. Williams*, 8th Dist. Cuyahoga No. 94242, 2010-Ohio-5484, citing *State v. Ghaster*, 8th Dist. Cuyahoga No. 91576, 2009-Ohio-2134. A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge. *Id.*, citing *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988).

**{¶53}** Under these circumstances, and in light of the evidence presented in support of Taylor's convictions, we cannot find that the line of questions and the resulting discussion, without more, materially prejudiced Taylor or interfered with his right to a fair trial. We find, therefore, that the trial court did not abuse its discretion in failing to order a mistrial following this remark. Accordingly, we overrule the fourth assigned error.

## Consecutive Sentences

**{¶54}** In the fifth assigned error, Taylor argues the trial court's imposition of consecutive sentences was contrary to law and amounted to cruel and unusual punishment.

**{¶55}** We review consecutive sentences using the standard set forth in R.C. 2953.08. *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527, ¶ 15. That statute provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4). *Id*. at ¶ 16; R.C. 2953.08(G)(2).

**{¶56}** R.C. 2929.14(C)(4) requires a trial court to make three distinct findings when imposing consecutive sentences. The trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find the existence of one of the three statutory factors set forth

in R.C. 2929.14(C)(4)(a)-(c). The failure to make these findings is contrary to law. *Id*. at ¶ 19.

{¶57} In this case, a review of the record demonstrates that the trial court made the statutorily mandated findings as outlined above. Upon imposing consecutive sentences, the trial court stated :

> This court does find that consecutive sentences are necessary to protect the public from future crimes. The court further finds that based upon defendant's attitude when he testified, the way he presented himself during his testimony, the lack of remorse that he showed, the lack of respect that he obviously has for women, this court finds that consecutive sentences are necessary to punish the offender. The court further finds that consecutive sentences are not disproportionate to the danger the offender poses to the public. And the court further finds that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.

Tr. 888-889.

{¶58} Here, the trial court found that the sentence was "necessary to protect the public from future crime or to punish the offender." It also found that consecutive sentences were "not disproportionate to the seriousness of Taylor's conduct and to the danger the offender poses to the public."

{¶59} Finally, the trial court further found that this was one of the worst offenses of its kind, because the Taylor and E.W. were related, that E.W. has been hindered in her involvement with society, and Taylor threatened E.W. if she told anyone. Thus, the trial court made all the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences.

**{¶60}** To the extent that Taylor is arguing that the trial court did not consider proportionality and consistency as required by R.C. 2929.11(B) in imposing consecutive sentences, we find no merit.

**{¶61}** R.C. 2929.11(A) provides that a felony sentence shall be reasonably calculated to achieve two "overriding purposes" of felony sentencing: (1) "to protect the public from future crime by the offender and others," and (2) "to punish the offender using the minimum sanctions that the court determines accomplish those purposes * * *." In order to achieve these purposes, the sentence imposed for a felony must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). A court that imposes a sentence for a felony has the discretion to determine the most effective way to comply with the purposes and principles of sentencing outlined in the statute. R.C. 2929.12(A). In exercising that discretion, however, the trial court must consider the seriousness, recidivism, and other mitigating factors set forth in R.C. 2929.12. *Id*.

**{¶62}** While we note that the trial court must consider the principles and purposes of sentencing as well as the mitigating factors as outlined above, the court is not required to use particular language or make specific findings of its consideration of those factors. *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13, citing *State v. Carman*, 8th Dist. Cuyahoga No. 99463, 2013-Ohio-4910, ¶ 14. In fact, R.C. 2929.11 and 2929.12 are not fact-finding statutes, and consideration of the appropriate factors can be

presumed unless the defendant affirmatively shows to the contrary. *Id.*, citing *State v. Stevens*, 1st Dist. Hamilton No. C-130278, 2013-Ohio-5218, ¶ 12. Nevertheless, as previously noted, the record reflects that the court considered Taylor's criminal record and addressed the seriousness of Taylor's actions. We are therefore not persuaded by Taylor's argument in this regard.

{¶63} In light of the foregoing findings and the record before us, we cannot clearly and convincingly find that the trial court's imposition of consecutive sentences is contrary to law. Accordingly, we overrule the fifth assigned error.

## Sexually Violent Predator Specification

{¶64} In the sixth assigned error, Taylor argues the trial court erred when it instructed the jury, over his objection, that they could find him to be a sexually violent predator. Specifically, Taylor contends that the indictment improperly charged him with sexually violent predator specifications when he had no prior conviction for a sexually violent offense.

{¶65} Taylor relies on *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, in support of his position. In *Smith*, the court held that a "conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction

and the sexually violent predator specification are charged in the same indictment." *Id*. at syllabus. However, Taylor's reliance on *Smith* is misplaced.

**{¶66}** Prior to April 29, 2005, R.C. 2971[.01](H)(1), defined a sexually violent predator as "a person who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010 Ohio 2311, ¶ 28. The current version of the statute provides: "Sexually violent predator means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1).

**{¶67}** We have previously interpreted the General Assembly's purpose in revising R.C. 2971.01(H)(1) to allow for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense. *State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 25. *See also State v. Stansell*, 8th Dist. Cuyahoga No. 100604, 2014-Ohio-1633.

**{¶68}** Given the revisions to the statute and the General Assembly's explicit purposes in enacting them, the present law allows for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense. Consequently, the trial court did not err when it instructed the jury that it could find Taylor guilty of the sexually violent predator specification. Accordingly, we overrule the sixth assigned error.

## Court Costs

{¶69} In the seventh assigned error, Taylor argues that the trial court erred when it did not impose costs at the sentencing hearing, but ordered him to pay court costs in the journal entry. In support of his argument, appellant cites to the Ohio Supreme Court's decision in *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

{¶70} In *Joseph*, the court held that it is reversible error under Crim.R. 43(A) for the trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. *Id.* at ¶ 22. The court reasoned that the defendant was denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court because the trial court did not mention costs at the sentencing hearing. *Id*. The remedy in such a situation is a limited remand to the trial court for the defendant to seek a waiver of court costs. *Id*. at ¶ 23; *State v. Mays*, 2d Dist. Montgomery No. 24168, 2012-Ohio-838, ¶ 17.

{¶71} In its brief to this court, the state maintains that the trial court in fact imposed costs in open court. Our review of the record reveals that the trial court mentioned costs twice during Taylor's sentencing hearing. In relevant part, the trial court stated:

> On the kidnapping, * * *. The sentence of the Court is [$]250 in costs, 11 years at the Lorain Correctional Institution. * * *. On Count 9, intimidation of a witness, the sentence of the court is [$]250 in costs, * * *.

Tr. at 888.

However, in its journal entry, the trial court stated in pertinent part as follows:

The court hereby enters judgment against the defendant in an amount equal to the costs of this prosecution.

Journal Entry, July 29, 2013.

**{¶72}** During oral argument, this court queried whether the state would concede. The state was reluctant, but admitted that it had failed to present evidence relevant to the cost of prosecution. Consequently, because of the discrepancy in the trial court's pronouncement at the sentencing hearing with that in the journal entry, we sustain the assigned error, vacate the cost contemplated by the journal entry, and remand this matter to the trial court to allow Taylor to move the court for a waiver of court costs pronounced at the sentencing hearing.

**{¶73}** Judgment affirmed in part, reversed in part, and the cause remanded to allow appellant to seek a waiver of court costs and to correct the July 29, 2013 journal entry.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., CONCURS (WITH ATTACHED SEPARATE OPINION);
EILEEN T. GALLAGHER, J., CONCURS AND CONCURS WITH ATTACHED OPINION


LARRY A. JONES, SR., P.J., CONCURRING:

**{¶74}** I concur with the majority's holding in this case but write separately to address the third assignment of error and my concern with the trial court's decision to sua sponte offer to have a representative from the Victim Impact Unit stand next to E.W. during her testimony. Taylor argues on appeal that the trial court's actions could have elicited unfair sympathy from the jury towards E.W. and deprived him of a fair trial.

**{¶75}** The transcript reflects that shortly into E.W.'s direct examination, the prosecutor asked her, "Are you okay?" E.W. responded, "Yeah. Yes." The court questioned, "Ms. [E.W.], do you want the lady from victim impact to come stay with you?" E.W. replied, "Yeah." Defense counsel objected. The trial court called a sidebar and defense counsel argued that allowing the victim representative to stand next to E.W. would "corroborate" and "give credence to" E.W.'s "story." The trial court disagreed, reasoning that the victim representative was not going to testify; thus, she was going to support E.W., not "support" E.W.'s "story."

**{¶76}** The cases the majority cites involve much younger children; E.W. was 17 years old when she testified. Moreover, it is interesting to note that in *State v. Walton*, 12th Dist. Clermont No. CA91-03-022, 1991 Ohio App. LEXIS 5277 (Nov. 4, 1991), it was only after the court recessed and convened with counsel in chambers, that the court

allowed an adult to sit next to the 13-year-old victim during her testimony. *Id.* at *5. Here, the court held a brief sidebar before summarily overruling defense counsel's objections.

{¶77} Although Evid.R. 611 empowers the trial court with broad discretion to conduct its courtroom in its own fashion, a better course of action would have been for the trial court to have taken a recess so that E.W. could have composed herself and received support from the victim representative outside the presence of the jury.

{¶78} Instead, the trial court's decision to *offer* to have the victim representative come stand next to E.W. during her testimony gave the appearance that the victim representative was improperly vouching for her credibility.

{¶79} However, pursuant to Crim.R. 52(A), I would find the error harmless because there was overwhelming evidence to support the guilty verdicts. *See State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994) (holding that a nonconstitutional error is harmless when there is substantial other evidence to support the guilty verdict.) Therefore, I would not reverse based on the trial court's decision to allow the victim representative, over defense counsel's objection, to stand next to the victim while she testified.